TOBIAS *vs.* HARLAND.

*Slander* will not lie for saying that a *particular article* manufactured by another, or in which he deals, is not good, or in other words, is *bad* : nor for saying that the articles manufactured by him, or in which he deals, are *bad;* nor that they are not as good as articles of similar kind manufactured by another, or are *inferior* to articles manufactured by such other, unless *special damage* is alleged.

Where the words are spoken not of the *trader* or *manufacturer,* but of the *quality of the articles* made or dealt in, to render them actionable, *per se,* they must import that the plaintiff is guilty of a deceit or mal-practice in the making or vending, or of a want of skill in the manufacturing of the articles.

DEMURRER to declaration. The declaration, after stating, by way of inducement, that the plaintiff used and exercised the trade and business of a *manufacturer* of patent lever watches, called S. J. Tobias & Co's patent lever watches, and that the defendant was a dealer in patent lever watches manufactured by M. J. Tobias and Robert Roskell, and by other persons, averred that the defendant intending to defame and slander the plaintiff, and to injure and prejudice him in the use and exercise of his trade and business of a manufacturer of patent lever watches, falsely and maliciously spoke and published of and concerning the plaintiff in his said business, the following words : 1. Tobias' watches, (meaning the watches manufactured by the plaintiff,) are bad. 2. S. J. Tobias & Co.'s watches are bad. 3. S. J. Tobias & Co's. watches are inferior watches. 4. Tobias' watches are inferior watches. 5. This watch (meaning a patent lever watch which he held in his hand, and which had been manufactured by the plaintiff,) is not a good watch. 6. This watch, (meaning, &c. as in the last count,) is an inferior watch. 7. This watch, (meaning &c. as in last count,) is a bad watch. 8. S. J. Tobias' watches, (meaning the watches manufactured by the plaintiff,) are inferior to M. J. Tobias' and to Roskell's. 9. This watch, (meaning a watch he held in his hand manufactured by the plaintiff,) is inferior to M. J. Tobias' and to Roskell's ; and concluded by averring that by means of the speaking and publishing of the said words

the plaintiff was greatly injured and prejudiced in his trade and business, and divers citizens, since the speaking and publishing of the words, had refused to purchase the watches manufactured by the plaintiff, and so the plaintiff was deprived of great gain and profit.

The words were set forth in nine distinct counts. There were nine other counts similar to the above, except that it was stated that the plaintiff was an *importer* and *dealer* in a description of watches called S. J. Tobias & Co's. patent lever watches, manufactured expressly for the plaintiff at Liverpool; that large quantities of such watches were annually sold by him ; that at the time of the speaking of the words the plaintiff had on hand and was the owner of a large number, to wit, 1000 watches of the value of $200,000; that the defendant being a dealer in similar watches manufactured by M. J. Tobias, Robert Roskell and others, and intending to defame and slander the plaintiff, and to injure and prejudice him *in his trade and business* of an importer and dealer of such watches as aforesaid, spoke and published *the same words* set forth in the first set of counts; which words were set forth with averments and inuendoes. These counts concluded with averring the same injury as set forth in the conclusion of the first counts, with the addition that the plaintiff was hindered and prevented from selling and disposing of the watches he had on hand.

. To this declaration the defendant put in a general demurrer, and the plaintiff joined in demurrer.

*H. Bleecker*, for defendant. The words charged in the plaintiff's declaration are not actionable in themselves, and special damage is not alleged with such certainty that the plaintiff is entitled to recover on that ground. Four of the counts in each set relate to words spoken in reference to a particular watch, for which most clearly an action will not lie, as such words could not, by possibility, affect the trade or business of the plaintiff; on which ground, if at all, the action must be sustained. In four of the other counts the watches of the plaintiff are spoken of in comparison with other watches. It cannot be that for the expression of an

opinion of the comparative value of articles of merchandize offered for sale by different individuals, that a person should be subjected to an action of slander; and in the remaining count, and in some already noticed, where the defendant is charged with averring the watches of the plaintiff not to be good, or in other words bad, the words are not actionable, as they do not impute to the plaintiff want of skill, or integrity. The watches might in fact be bad, and if so, the defendant had a right to pronounce them such. That the plaintiff was not entitled to recover as for special damage, the same not being alleged with sufficient certainty, the counsel cited Starkie on Slander, 321, 1 Chitty's Pl. 389, 1 Saund. 343, *b. n.* 5, 12 Mod. 597, 2 Lutw. 1295, Bull. N. P. 7, 10 Johns. R. 281, Cro. Jac. 499, Ld. Raym. 1007, 1 Rolle's Abr. 58, Sidf. 396. 8 T. R. 130.

*J. L. Wendell,* for plaintiff. Words are actionable which directly tend to the prejudice of any one in his office, profession, trade or business; (Starkie on Slander, 100;) and that whether they reflect upon the honesty of the dealings of a merchant or tradesman, upon his credit or the excellence of the article in which he deals. (Starkie on Slander, 108, 110, 119.) Thus, where the words spoken were, "he hath nothing but rotten goods in his shop," it was held that the action would lie. (12 Mod. 420.) The court said that had the words been only that the plaintiff had rotten goods in his shop, the action would not have lain, and this no doubt for the reason that such words would not have tended to the prejudice of the plaintiff in his trade, for a man might well have rotten goods in his shop and purchasers not be deterred from frequenting his shop; but the charge being that he had *nothing* but rotten goods, no one of course would deal with him. So, where the words were, "The True Briton (a newspaper) is the lowest now in circulation, and we submit it to the consideration of advertisers," the action was held to lie, (2 Starkie's R. 93,) and justly, because the words tended directly to the prejudice of the proprietors of the paper by deterring men of business from advertising in such paper, and inducing them to employ the

NEW-YORK.
May, 1830.

Tobias
v.
Harland.

defendants or other is preference.   A casual instance of exercising the business of a salesman, as in the sale of a *single horse*, it is admitted will not give a right of action for misrepresentation.   This admission may well be made without injury to the rights of the plaintiff in this cause to maintain his action : for here the manufacturing, importing and dealing in the article was the ordinary business of the plaintiff; it was his trade and business, and not an occasional act.   The exception instead of impugning proves the rule.   The words in this case are alleged to have been spoken falsely and maliciously ; and it being averred that the defendant was a dealer in watches of a similar description, and that his object was to injure and defame the plaintiff in his business, the legal intendment is that the intent of the speaking of the words was to benefit himself, and he should be held responsible.   It has been decided that an action on the case will lie for the assertion of a falsehood by a party, with the intent to benefit himself, where a direct, positive and material injury results to another from such assertion.   (2 Wendell, 385.)   Whether an injury resulted to the plaintiff in this case was a proper subject for the consideration of a jury ; and where damage is the necessary consequence of the speaking of words, a jury are authorized to find for the plaintiff, although no special damage be alleged.

*By the Court*, MARCY, J.   Special damages are not so alleged in the declaration that proof of them could be received on the trial.   The general allegation of the loss of customers is not sufficient to enable the. plaintiff to shew a particular injury.   (Bull. N. P. 71.   Saund. 243, *n.* 5.   1 Str. 666.) If the plaintiff in this suit can recover at all it must be because the words are actionable in themselves.   Whether they are so or not is the only question presented by the demurrer.

The words charged do not directly impeach the integrity, knowledge, skill, diligence or credit of the plaintiff.   They only relate to the quality of the article which he manufactures, or in which he deals.   The words in both sets of counts which relate to a particular watch, and those which are obviously mere comparisons, are clearly not actionable.   No

instance can be found, I believe, where an action has been sustained on words for misrepresenting the quality of any single article which a person has for sale, unless special damages are alleged and proved. To impute ignorance to an attorney or counsellor in a particular cause, or want of skill to a physician in relation to the disease of a particular patient, is not actionable. (8 Johns. R. 64. Cro. Eliz. 620.) On the same principle, an allegation that a manufacturer has made a particular article bad cannot be a slanderer. A contrary doctrine would, in my apprehension, be exceedingly pernicious. It would render a man liable to be called into court to justify an unfavorable opinion he might express of any manufactured article which another had for sale. It would involve a strange contradiction to hold a man answerable for words imputing defects in an article of merchandize, and to exonerate him from responsibility when he charges his neighbor with a defect or want of moral virtue, or the neglect of moral duty or obligations. A charge of the moral deficiencies above referred to is declared not to be actionable. (3 Wils. 177.)

I do not find that even an attempt has been made to sustain an action on words of comparison. To say that the watches manufactured by the plaintiff are inferior to those made by any other particular manufacturer, can never be held actionable where no special damages result therefrom, without embarrassing the freedom of judgment in matters of private concern, and making errors of opinion in relation to the common and necessary transactions of life a fruitful source of litigation.

It only remains to determine whether an action can be maintained for those words which allege that the plaintiff's watches were not good, or were bad. Good and bad are generally terms of comparison. The same article may be called, not inaccurately, good when compared with one of the same kind of a much inferior quality; and it may, with equal correctness, be characterized as bad when spoken of with reference to the most perfect article of the kind. But suppose the words to be spoken positively, and not comparatively, I do not believe they are actionable *per se*. The

Tobias
v.
Harland.

cases referred to on the argument for the plaintiff do not go far enough to support the action in this case. Those which seem to give the most countenance to this action relate to charges against brewers. It is true that in England it has been held actionable to say of a brewer that he makes unwholesome beer; (Freeman's Rep. 25; 1 Vin. Abr. 477;) but that case is put expressly upon the ground that it is a statutable offence to make and sell such beer. It is very evident, from the language of the court, that if the charge had not imputed to the plaintiff deceit or mal-practice in adulterating his beer, the words would not have been adjudged actionable in themselves. In the case of *Dixie* v. *Fenn*, (Sir Wm. Jones, 444,) the words were spoken of the beer made by the plaintiff, and were extremely disparaging, but they were held not to be actionable. They represented the beer to be worthless, but not unwholesome. The case which most resembles the present is one found in 12 Mod. 420, wherein the words charged were, " The defendant keeps nothing but rotten goods in his shop." The court say, if the words were only that he had rotton goods, the action would not lie; for the slander is, *to have nothing but rotten goods*. It appears to me that this case proceeded upon the ground that the words imputed deceit or mal-practice; hence the distinction which the court make between having rotten goods and nothing but such goods. If he had nothing but rotten goods, he must of necessity practice an imposition upon all who dealt with him. The case of *Tobart* v. *Tipper*, (1 Campb. 330,) was for a libel, and the rules in such a case differ from those that govern slanderous words spoken; but even in that case the report shews that something more than the imputing to the plaintiff the publication of an absurd poem was contained in the charge. All of the piece complained of is not, I believe, stated; and I infer from some of the remarks of Lord Ellenborough that the action was not maintained for characterizing the plaintiff's work as absurd, but for imputing to it an immoral tendency. It was not represented as merely good for nothing, but as having noxious qualities. The question submitted to the jury was whether the defendant, by the publication, intended to put down a nuisance to

public morals, or to prejudice the plaintiff. Nothing can be drawn from that case to establish a principle that will sustain this.

It appears to me, that when the words are spoken, not of the trader or manufacturer, but of the quality of the articles he makes or deals in, to render them actionable, *per se*, they must import that the plaintiff is guilty of deceit or mal-practice in the making or vending of them. The words used by the defendant here do not import such charge, nor do they amount to a charge of the want of skill. They do not assert that the defendant could not make or did not deal in good watches, or that he practiced any deceit in making them by which purchasers were imposed on.

The principle on which this action must be sustained, if it be sustainable, would made a new class of words actionable ; and when applied, as it would be, to the business communications of every description of citizens, its practical effects would, in my judgment, be alarming.

Judgment for defendant.