# N. Y. SUPERIOR COURT.

JACOB STAPENHORST, *et al.*, plaintiffs and respondents, agt. THE AMERICAN MANUFACTURING COMPANY, defendant and appellant.

Where on the trial in an action of *negligence*, the evidence given is not of such a character as would authorize the court to determine the diligence or negligence of either side as matter of law, the questions relating thereto on both sides should be submitted to the jury.

Where plaintiffs' witness was allowed to testify against defendant's objection and exception, that from the first of January to the first of June of the preceding year, plaintiffs had about 200 customers, from which they realized a profit of not less than $1,000 per month, and which subsequently were all lost.

*Held*, that the reception of this evidence was erroneous for several reasons. 1st. The complaint did not allege the *names* of said customers. 2d. It did not even contain an averment of loss of customers as an item of *special damage* in general terms. 3d. The evidence already given, showed affirmatively that no damage had occurred prior to 1869, and consequently the testimony related to a period too remote in any aspect of the case.

*General Term, November*, 1873.
*Before* BARBOUR, *C. J.*, MONELL *and* FREEDMAN, *JJ.*

APPEAL from judgment entered upon the verdict of a jury in favor of the plaintiffs for $1,759.59.

WILLIAM HENRY ARNOUX, *for appellant.*
MOODY B. SMITH, *for respondents.*

*By the Court*, FREEDMAN, *J.*—The complaint alleged that the defendant let and rented to plaintiffs the first floor and basement of certain premises, situated on the corner of Mott and Hester streets, in the city of New York; that the plaintiffs

occupied the demised premises for the manufacture of French and German mustard; that during the same time the defendant occupied the upper stories of said premises for manufacturing umbrella frames; that from the first of May, 1868, to June, 1869, oil, impregnated with iron filings, or particles of iron, finely pulverized, leaked, through the negligence of the defendant, through from the defendant's premises into plaintiff's mustard mills; that in consequence thereof great damage has been done to plaintiffs' business; that a great deal of their mustard has been ruined thereby; that the character and reputation of their manufactured mustard has been ruined, and that their business has been greatly injured thereby; that the plaintiffs have been damaged in the premises in the sum of $25,000, and that said damage has been done without any negligence on the part of the plaintiff.

The gravamen of the charge, therefore, was negligence on the part of the defendant in carrying on its business operations in that part of the premises occupied for that purpose. Such negligence is not a positive element, but it consisted, if it existed, in a mere omission to do something which the law required under the circumstances, or, in other words, in a want of diligence without positive intention to injure the plaintiffs. The law required that in carrying on its operations the defendant should use due diligence to prevent injury to the plaintiffs; that is to say, the defendant was bound to use the same amount of care, caution, attention and discretion, as the ordinary prudent man would put forth under precisely the same circumstances. The plaintiffs were bound to use similar diligence to guard against injury. The want or omission on either side of such care, caution, attention or discretion, constituted negligence. Thus the duty of such diligence, &c., and, consequently the negligence, was relative on both sides; that is, relative to the actual situation of affairs and the means of knowledge of the parties. The questions, therefore, had to be determined upon *all* the circumstances of the case, of which the relation of landlord and tenant was

but one, and a comparatively unimportant one; and in determining them it became necessary for the learned judge below, and for the jury, if the case was rightfully sent to them, to place themselves in the position of the persons whose acts had to be judged. The evidence given upon the trial, when considered in the light of these principles, was not of such a character as would have authorized the court to determine the diligence or negligence of either side as matter of law, and, consequently, the questions relating thereto on both sides had to be submitted to the jury as questions of fact. For this reason, defendant's exception to the refusal of the court to dismiss the complaint is clearly untenable. The case could not be disposed of on the simple theory that, as between landlord and tenant, the landlord is not bound to repair without express covenant.

A more serious question is presented by the exceptions relating to the reception of certain evidence and to certain portions of the charge that bear upon the question of damages. Evidence had been given that plaintiffs' business had extended to the principal cities of the United States, and of the manner in which it was conducted. That in March or April, 1869, mustard commenced to be returned by plaintiffs' customers on the ground of its bad quality, and that in the course of some further time all the mustard manufactured between the first of January and the month of June, 1869, was thus returned. That on investigation the said mustard was found to be utterly worthless, and that it had to be thrown away. That, therefore, numerous attempts were made by plaintiffs to discover the cause, and that for that purpose, and at great expense, the mills were frequently stopped, cleaned up and thoroughly inspected, and chemical analyses were made of the mustard and of the materials that entered into its manufacture. And that finally it was discovered that oil, impregnated with iron, was leaking from defendant's premises into plaintiffs' mustard mills, and, to all appearances, had been thus leaking for some time, and that this had

worked the injury. Evidence had also been given of the quantity of mustard thus lost, of its market value in a sound condition, and of the expenses incurred by plaintiffs in discovering the cause of the difficulty and in obviating the injurious effects produced. Then it happened that Julius Wolff, one of the plaintiffs, on being recalled, was allowed to testify, against defendant's objection and exception, that from the first of January to the first of June of the preceding year, plaintiffs had about 200 customers, from which they realized a profit of not less than $1,000 per month, and which subsequently were all lost. This ruling was erroneous for several reasons. The complaint did not allege the names of said customers. It did not even contain an averment of loss of customers as an item of special damage in general terms. No such loss could, therefore, be proven (*Hallock* agt. *Miller*, 2 *Barb.*, 630; *Tobias* agt. *Harland*, 4 *Wend.*, 537). The evidence already given showed affirmatively that no damage had occurred prior to 1869, and consequently the testimony objected to related to a period too remote in any aspect of the case. For the damage complained of not being the result of intention, but of negligence, the law holds the defendant responsible only for such results as sprung naturally, *i. e.*, according to the usual course of things, from defendant's negligent acts, unaffected by extraneous causes. Upon any such result the said testimony had no legitimate bearing, and that it may have prejudiced the defendant, becomes apparent when it is considered in connection with the charge. The jury were instructed that in case they found that the negligence of the defendant was not occasional, but general and continuous, in the language of the law, gross, they should, in addition to the market value of the goods actually spoiled, and the interest thereon, find from the evidence what damage was done to the business of the plaintiffs, and should also give them compensation for the loss of time and for the trouble that they were put to. Plaintiffs' counsel requested the court to charge, further, that if the defendant was guilty

Stapenhorst agt. American Manufacturing Co.

of gross or of reckless negligence, it is liable for the injury to the good-will of plaintiffs' business. This proposition the court submitted to the jury by saying, "I charge you that in effect, except I prefer not to use the words 'good-will of the business,' but to say the damage done to the business, as it has been given in evidence before you." This was equivalent to saying that the jury had a right to consider the testimony objected to in determining the aggregate amount of damage.

The error committed in the reception of said testimony cannot, therefore, be disregarded, and this being so, it is unnecessary to express an opinion on the questions raised by the remaining exceptions.

The judgment appealed from should be reversed, and a new trial ordered, with costs to appellant to abide the event.

BARBOUR, C. J., and MONELL, J., concurred.

NOTE.—The complaint avers that in consequence of the negligent acts of the defendant "great damage had been done to plaintiffs' business; that a great deal of their mustard has been ruined thereby; that the character and reputation of their manufactured mustard has been ruined, and that their business has been greatly injured thereby; that the plaintiffs have been damaged in the premises in the sum of $25,000." Now, how could the plaintiffs' show what damages they had sustained, unless they could introduce evidence to prove the amount of their prior sales and the subsequent loss thereof in consequence of their ruined article, returned to them by their lost customers? Surely no averment of special damage in the complaint is necessary to authorize such evidence. It is a part of the legitimate damages arising out of the substantive cause of action.

It would appear to be a new mode of pleading where a loss of customers is averred as a cause of damage, to insert the *names* of such customers to authorize evidence to be given of their loss. It would seem that the names, occupation, residence, &c., of such customers, are matters of evidence entirely.

The witness objected to stated, that from the first of January to the first of June of the *preceding year*, plaintiffs had about 200 customers, &c. If this meant the year 1868, the testimony would not be very remote in showing prior sales and income to losses in 1869.—REP.