# MARTIN E. HERNANDEZ

*v.*

# JOHN B. DRAKE.

1. PUBLICATION—*may be in a religious newspaper.* The publication of notice, in a suit by attachment, in a weekly religious newspaper, will be sufficient to give the court jurisdiction.

2. SAME—*evidence of publication of notice in attachment.* On bill to set aside the sale of real estate under a judgment in an attachment suit, the evidence showed that the printer certified that he had published the notice for four successive weeks, and a witness testified that it appeared to have been published eight or nine weeks, the first publication being in time: *Held,* that the proof showed jurisdiction in the attachment suit. The insertions of the notice more than for the first four consecutive weeks did no harm.

3. JUDICIAL SALE—*can not be impeached collaterally except for want of jurisdiction.* Where the court acquires jurisdiction in an attachment suit, by a proper affidavit, a formal writ and legal levy, and the publication of the requisite notice, it can not be divested by any errors, however grave, that may intervene, and its judgment will be absolutely binding and conclusive in all collateral proceedings, as well in equity as at law. No errors in the proceeding not going to the jurisdiction of the court can furnish cause for vacating the same, on bill in chancery to set aside a sale of real estate thereunder.

4. SAME—*setting aside without notice.* Where a sale of real estate is made under execution, which is void for want of being signed by the clerk, and the plaintiff in the execution becomes the purchaser, and receives a sheriff's deed, the sale may be set aside on his motion, without notice to the defendant in execution, the whole proceeding being a nullity. If a stranger purchases, the rule may be different as to notice to him.

5. SAME—*sale on execution issued after one year.* Where the first execution is not issued until after the expiration of a year from the rendition of judgment, it is not void, but merely voidable, and if the defendant takes no steps to have it quashed, or the sale under it set aside, until a sheriff's deed is made for the property sold under it, or within the time to redeem, the court will not set aside the sale, but hold it good.

6. JURISDICTION—*mere errors do not affect it.* The objections that a plaintiff in an attachment suit took an assignment of the interest of his partner in an account, and brought the suit on the same in his own name alone, irregularity and error in suing out a *dedimus* to take a deposition, filing interrogatories, and the incompetency of a witness on the trial, are

none of them jurisdictional, and can not be urged on bill to set aside a sale under the judgment.

7. EXECUTION—*must be signed, or void.* The statute makes it indispensable that an execution be signed by the clerk, as much so as that it be under the seal of the court, and without being so signed it is void, and confers no power on the officer to whom it is addressed, and the sale of land and all subsequent proceedings under it are of no effect.

8. JUDGMENT—*becomes dormant when execution is not issued within a year.* If an execution is not issued within one year from the adjournment of the court at which the judgment is rendered, it becomes dormant, and no execution can regularly issue thereon until the judgment is revived by *scire facias.*

9. CHANCERY JURISDICTION—*to try titles at law.* If a sale under execution, in a suit by attachment, is void, the owner's remedy is at law, by action of ejectment, and a court of equity has no jurisdiction; and the charge of fraud will not confer jurisdiction in such cases.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Messrs. ELDRIDGE & TOURTELLOTTE, for the appellant.

Messrs. AYER & KALES, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In May, 1864, Eber V. Haughwout and others, described as partners, brought suit by attachment in the circuit court of Cook county, against appellant, who then resided on the Island of Cuba. An affidavit was filed in the clerk's office, stating an indebtedness, and that appellant was not a resident of the State. A writ of attachment was issued and levied on the real estate in controversy. There being no personal service, on the return of the writ the clerk of the court caused a notice under the statute to be published in a weekly newspaper in the city of Chicago, for four weeks successively, according to the requirements of the statute. On the 11th day of October, after the commencement of the suit, a judgment was obtained against appellant for $4492, and the costs of suit.

On the day the judgment was rendered, a special writ of *fieri facias* was attempted to be issued by the clerk, command-

ing the sheriff to make sale of the property levied on under the writ of attachment. But whilst it was in all other respects regular, it lacked the signature of the clerk. It was afterwards returned by the sheriff with an indorsement that, on the 3d day of November, 1864, he had sold the property described in it, after advertising the same according to law, to Haughwout, one of the plaintiffs, for the amount of the judgment and costs. The purchaser received a certificate of purchase, which was recorded on the 7th day of December, 1864, and after the time had expired, and no redemption having been made, the sheriff executed to the purchaser a deed of conveyance.

About four years after this sale by the sheriff, the imperfection in the execution having been discovered, on the 5th of January, 1869, the plaintiff's attorney filed a motion in the court to set aside the sale, which motion was allowed and an execution was awarded. A new writ was issued on the 13th of the same month, under which the property was again sold by the sheriff on the 11th of February, 1869, and was again purchased by the same plaintiff for the amount of judgment, interest and costs. He received a certificate of purchase which he, in March following, assigned to appellee, Drake, for the sum of $3000, and executed to him a warranty deed for the premises a few days afterwards. This deed was recorded on the 3d of April, 1869. The premises not having been redeemed, on the 12th of May, 1870, Drake received a sheriff's deed, as the assignee of the purchaser, and it was filed for record on the next day. Drake then took possession of the property, and caused it to be fenced, and has since made other improvements on it, and has paid the taxes assessed on it since receiving his deed.

Appellant filed a bill to the September term, 1871, of the circuit court of Cook county, to set aside and annul the judgment and all proceedings under it, and to compel Drake to convey the property to appellant. The bill charges fraud, and that there were such irregularities in the attachment proceedings as rendered the judgment and sale under it void, and that

the title was not legally transferred to Drake, or in anywise affected. On a hearing in the court below, the bill was dismissed, and complainant brings the record to this court on appeal, and asks a reversal.

The charge that the attachment suit was fraudulently brought without any grounds to justify it, is not pressed in this court, nor do counsel seem earnest in urging that Drake was a fraudulent purchaser. But even if they were so pressed, we think the record fails to show that he was not a purchaser in good faith, whether or not he is chargeable with notice of the errors in this record. We deem it unnecessary to discuss the evidence on the question of actual fraud, as to him, as it is insufficient to prove the charge.

An examination of the proof shows no defect in the affidavit on which the writ of attachment issued; the writ was in form; the notice of publication conformed to the statute, and the judgment finds that notice was given. Nor is any objection made to any step that was taken to confer jurisdiction, except that the notice was published in a religious weekly newspaper, and that the certificate of publication was insufficient.

In the case of *Kerr* v. *Hitt*, 75 Ill. 51, it was held that the "Legal News," a weekly law publication, was such a newspaper as was required by the statute. What was there said applies with full force to this case, and renders further discussion of this question unnecessary.

The evidence shows that the printer certified he had published the notice for four successive weeks, and Reid swears that it appeared to have been published eight or nine weeks. If this evidence is true, and it is not contradicted, then the publication was amply sufficient. If the first publication was on the 9th of June, and the last was on the 31st of July, and it was inserted in each weekly publication between these dates, the requirement of the law would be fully complied with, as the latter insertions after the first four could not possibly do any harm. It is only necessary to state the proposition, for all to see and fully comprehend its truth.

It then follows, that as there was a proper affidavit and bond, a formal writ and a legal levy on the property in dispute, and the necessary notice was given to the defendant of the suit, the court acquired jurisdiction over the subject matter of the suit, and having acquired complete jurisdiction to hear, determine and adjudicate in reference to the subject matter before it, the court did not nor could it lose that jurisdiction by any error that may have been subsequently committed. When the court became fully invested with jurisdiction, its judgment became absolutely binding and conclusive in all collateral proceedings—and this is true on a trial on a bill in equity as well as in a court of law. For errors intervening after the jurisdiction attached, the judgment might, no doubt, have been reversed in a direct proceeding, but they can not be urged in a collateral suit. Error in a judgment at law can not be assigned and tried on a bill in equity. Such a practice has never obtained.

The objection that plaintiffs in the attachment suit could not receive an assignment of the interest of a partner in the account sued upon, so as to vest them with a right to sue for and recover thereon at law, was, no doubt, ground of abatement, but in nowise affected the jurisdiction of the court. Had there been personal service, and no plea in abatement had been filed, and the same judgment rendered, no one would claim that the judgment would have been void, because that was not jurisdictional, and the same is equally true when service is had by publication. All that is said in reference to suing out the *dedimus*, filing interrogatories, the incompetency of Nicol as a witness, could only have been error and not jurisdictional, and can not be questioned in this proceeding. So of other errors and irregularities of which appellant complains.

The next question presented is, what was the effect of the execution issued without the signature of the clerk. The 40th section of the chapter entitled "Courts," R. S. 1845, p. 147, provides, that "the clerks of the circuit courts may issue process in all cases arising therein, which process shall bear *teste* in the name of and be signed by such clerks, respectively, and

be dated on the days on which they issue, and be made return-able according to law." That the writ must be signed by the clerk, is made indispensable by this enactment. The signature is as essential under this law as is the seal or other specific requirement, and in its absence the writ must be held to con-fer no power on the officer to whom it was directed. If with-out power, the sale and other proceedings under it were of no effect, and were as though they had never been had. Hence, appellee, Drake, acquired no rights under that sale, the sher-iff's deed, or the conveyance thereunder to him.

But the question recurs, what rights, if any, he derived through and by virtue of the second sale. The first was set aside, and an execution was awarded by the court for the sale of this property. We will not stop to discuss the question as to what notice the defendant must have in ordinary motions to quash executions and set aside levies and sales, as, in this case, the execution, levy and sale were without vitality, and the court, where they are clearly so, may set them aside with-out notice. Nor are we prepared to hold that the court might not, in such a case, order a new execution, without setting aside the sale, by vacating the satisfaction on the judgment docket, as the whole proceeding was without vitality, and the plaintiff in execution was the purchaser. Had a stranger bought, the plaintiff in execution, however, might have been required to give him notice before any order could be taken, but here the motion was made by the purchaser.

The case, then, stands as though no execution had issued or other proceedings had to obtain execution until the court or-dered one to issue, some four years after the rendition of the judgment. This being the case, what effect did the issue of that writ, the sale under it, and the sheriff's deed, produce on appellant's title? It was, then, an execution, issued more than a year after the rendition of the judgment, without having re-vived it by *scire facias*. At common law, a judgment became dormant if an execution was not issued within a year and a day, the presumption arising that it was satisfied, and it was irregular to sue out execution without reviving it. But the

presumption was so slight that the plaintiff was not required to make proof that it had not been satisfied, but it devolved on the defendant to prove the fact. The mere production of the judgment was sufficient evidence to require the court to revive it and award execution, and it was evidence authorizing a recovery in an action of debt upon the record of the judgment. Thus, it is seen, that whilst there was a presumption of satisfaction, it was so slight as not to require of the plaintiff other proof than the judgment itself, unless evidence was adduced by the defendant.

Nor has our statute altered the common law rule. It provides that the judgment shall be a lien on the real estate of the defendant for seven years after the last day of the term at which it was rendered, provided an execution should be issued within one year from the adjournment of the court. In other respects it left the common law as to the presumption of satisfaction and the necessity of a revival of the judgment, before execution could be had, in operation. Under the common law and the British statutes, where an execution was issued after a year and a day, it has been uniformly held that the execution was not void but merely voidable; and when thus issued, and the defendant took no steps to have it quashed or proceedings under it set aside before they were consummated, this neglect of the defendant was held to create a counter presumption sufficiently strong to overcome that of satisfaction, and the court would not set aside sales or other consummated proceedings under the execution.

The same rule has obtained in the various States of the Union, and the authorities all, it is believed, concur in announcing the same rule, and to the same effect is the case of *Morgan* v. *Evans*, 72 Ill. 586. That case is conclusive of this question, and renders its further discussion unnecessary.

To have availed of the irregularity in issuing the latter execution, appellant should have moved the court, before the time for him to redeem had expired, to quash the execution and set aside the sale; but, having failed to do so, he can not be heard now to avoid the sale. His application comes too late.

Syllabus.

Again, had the sale been void, as claimed by appellant, then his remedy would have been at law, by ejectment. This proceeding is designed to try legal titles only, and it does not pertain to equity to try ejectment suits, nor does the unsupported charge of fraud change the jurisdiction of the court in such cases.

There was no error in dismissing the bill by the court below, and the decree must be affirmed.

*Decree affirmed.*

Mr. JUSTICE SCOTT: I can not concur either in the reasoning or the conclusion reached in this opinion.