FRANK F. WILLIAMS, Respondent, *v.* HENRY S. COLWELL, as Admin-
     istrator, etc., of JAMES W. YATES, Deceased, and Others,
     Defendants.

                    ERNEST C. HAZARD, Appellant.

*Newspaper — what is, within the meaning of the Code relative to judicial sales.*

A publication issuing two editions daily, except Sunday, having a circulation in
     a city of 1,000, and elsewhere of more than 4,000, which, although containing
     matter of special value to attorneys, bankers, brokers, commission merchants
     and real estate dealers, yet devotes several columns to general advertising and
     to the publication of local and other news of general interest, and is printed in
     sheet form, as newspapers usually are, must be deemed a "newspaper" within
     the meaning of section 1434 of the Code of Civil Procedure, prescribing the
     method for publishing notice of sales of land by a sheriff, notwithstanding the
     fact that the publication is not sold by newsboys nor at news stands, but only
     by subscription and upon application at the office of the publisher.

     APPEAL by Ernest C. Hazard, the purchaser at a foreclosure sale,
from an order of the Supreme Court, made at the Erie Special
Term and entered in the office of the clerk of the county of Erie
on the 17th day of November, 1896, directing him to complete his
purchase.

     *Charles E. Forsyth,* for the appellant.

     *Arthur H. Williams,* for the respondent.

     Order affirmed, with ten dollars costs and disbursements on the
opinion of LAUGHLIN, J., delivered at Special Term.

     All concurred.

     The following is the opinion of LAUGHLIN, J. :
LAUGHLIN, J. :

     On the sale of the premises described in the complaint by a referee
duly appointed for that purpose in the judgment of foreclosure and
sale, one Ernest C. Hazard purchased the same for the sum of
$1,000 subject to certain incumbrances. The referee's deed, duly
executed, was tendered to Hazard. He declined to complete the

purchase upon the ground that the *Daily Mercantile Review*, in which the notice of sale was published, was not a newspaper within the intent and meaning of the provision of the Code of Civil Procedure with reference to publication of notices of sale of real estate in foreclosure actions. Upon this motion it was conceded on the part of the purchaser that all the other proceedings were regular and valid, and that there is no legal reason why he should not be compelled to complete his purchase if the *Daily Mercantile Review* is a newspaper within the meaning of the provisions of law referred to.

In behalf of the plaintiff, the affidavit of the publisher of the *Daily Mercantile Review* and a stipulation of the parties were presented, which show that two editions of the *Daily Mercantile Review* are published daily, excepting Sundays, and that it has a circulation in the city of Buffalo of 1,000, and in the county outside the city of 500, and in other parts of the State of New York and in twenty-four other States and in the Province of Ontario, Canada, of 3,600; that it publishes the records from the county clerk's office of judgments, satisfactions of judgments, chattel mortgages, real estate mortgages, assignments and discharges of same, deeds, mechanics' liens and discharges of same, notices of pendency of actions, bills of sale, the court calendars and decisions, a synopsis of the proceedings of the courts in Erie county, also a review of the New York and Chicago stock, grain and produce markets, of the Buffalo flour and grain markets, of the Buffalo prices of local securities and bank stocks, railway time cards, official time table of the departure of the mails, the live-stock markets of Buffalo, New York, St. Louis, Kansas City and Omaha, the Buffalo coal, hide and leather, wool and sheep, produce and grocery markets and prices of the various building materials, together with news of a general character each day relating to financial and mercantile matters and local affairs, and extensive reports of telegraphic news from all portions of the United States and abroad, containing matters of general interest to the public; and also reports of sporting news and other items of general public interest, and that other items of general interest cover from two to three columns of said paper, also, many advertisements of all kinds and descriptions; and that it has among its subscribers 250 lawyers and law firms, 16

bankers, 190 real estate men, and many merchants, contractors, manufacturers, builders and commission men, and that a large number of legal notices have already been published in said papers; that more than 450 have been published therein since February, 1894, the great majority thereof having been published during the past six months, and that more than 115 different law firms in Buffalo cause their legal notices, including notices of sale of real estate under foreclosure, to be published therein, and it appears that the *Daily Mercantile Review* has been frequently designated by the different judges of the courts of record as a newspaper for the publication of legal notices.

These facts are not controverted by the purchaser, but are in fact stipulated by him to be true, and he presents no affidavit in opposition to the motion, but merely a stipulation to the effect that the paper is not sold by the newsboys or at the news stands, but only by subscription and on application to the office of the publisher.

Annexed to the stipulation are copies of the morning and evening editions of the *Review* of August 28, 1896, that being one of the days on which the notice in question was inserted therein.

The Century Dictionary defines a newspaper as "a paper containing news; a sheet containing intelligence or reports of passing events, issued at short but regular intervals and either sold or distributed gratis; a public print, or daily, or weekly, or semi-weekly periodical, that presents the news of the day, such as the doings of political, legislative or other public bodies, local, provincial or national current events, items of public interest on science, religion, commerce, as well as trade, market and money reports, advertisements and announcements, etc. Newspapers may be classed as general, devoted to the dissemination of intelligence on a great variety of topics which are of interest to the general reader, or special, in which some particular subject, as religion, temperance, literature, law, etc., has prominence, general news occupying only a secondary place."

Other lexicographers employ other language, but of substantially the same import, in defining this word.

Burrill, in his Law Dictionary, gives the following definition of newspaper : " A paper or publication conveying news or intelligence. A printed publication issued in numbers at stated intervals convey-

ing intelligence of passing events. The term newspaper is popularly applied only to such publications as are issued in a single sheet and at short intervals, as daily or weekly."

The same definition is given in Abbott's Law Dictionary, and was long ago given by the Attorney-General of the United States with respect to the postal laws. (4 Op. Atty.-Gen. 10.)

In 1851 the same definition was given by the English Court of Exchequer in interpreting the Duty Laws. (*Attorney-General* v. *Bradbury*, 7 Ex. [W. H. & G.] 97.)

Counsel were unable to cite, and I have been unable to find, any precedent in the reports of our own State upon this question. There have been, however, many decisions of the highest courts of other States, which materially assist in reaching a correct determination of this controversy.

In 1870, in *Kellogg* v. *Carrico* (47 Mo. 157) a trust deed provided for a sale of land after thirty days' public notice in some newspaper. Notice was published in the *Legal Record and Advertiser*, printed in St. Louis in the form of a newspaper and issued to subscribers daily except Sunday. It was devoted to the dissemination of general legal intelligence and engaged extensively in legal advertising, including the publication of notices of sale under deeds of trust and sales on execution and judicial sales; it circulated particularly among real estate dealers, lawyers and those giving special attention to real estate sales at public vendue. The court said: "To that extent it was eminently well adapted to subserve the purposes of the parties to the deed of trust, in requiring the sale by the trustee to be advertised in some newspaper." "It was a law and advertising journal, and so, in a limited sense, at least, a newspaper; for, whether a newspaper or not is a question that cannot be determined by a consideration alone of the kind of intelligence it disseminated. * * * A paper devoted to the gathering up and dissemination of legal news among its readers is, or at least may be, a newspaper. I regard the *Legal Record* as a newspaper of that character." This decision was reaffirmed in *Benkendorf* v. *Vincenz* (52 Mo. 441).

In 1874 the Illinois Supreme Court held that the Chicago *Legal News*, published weekly and devoted principally to the dissemination of legal intelligence, but making reference to passing events, containing advertisements, brief notices of legislative bodies, per-

sonal and political items of interest to the general reader as well as the legal profession, was a secular newspaper of general circulation. (*Kerr* v. *Hitt*, 75 Ill. 51.)

The same court the following year, in *Hernandez* v. *Drake* (81 Ill. 34), held that a religious weekly newspaper was a newspaper within the statute relating to the publication of notices in attachment cases.

In 1876 the Court of Common Pleas of Philadelphia in *In Re Application for Charter* (11 Phila. 200) refused to grant an application for a charter for a corporation on the ground that the statute which required notice of the application to be published "in two newspapers of general circulation" was not complied with by a publication in the *Legal Intelligencer*, the circulation of which was mainly, if not entirely, confined to the legal profession; but the facts as to the matters published in the *Legal Intelligencer* are not disclosed by the reported case.

In 1878 the Supreme Court of Minnesota decided that service of a summons by publication in the *Northwestern Reporter*, a twelve-page weekly publication, somewhat different in size and shape from an ordinary newspaper, devoted specially to the legal profession, in which are published the general laws of the State, the decisions of the Supreme Court of that State and of Wisconsin, and occasionally decisions of other States, a court directory, cards of attorneys, land transfers, advertisements and notices of law books and miscellaneous business advertisements and legal anecdotes, was not a compliance with the statute requiring such publication in a newspaper. (*Beecher* v. *Stephens*, 25 Minn. 146.)

The same court ten years later, in *Hull* v. *King* (38 Minn. 349), held that the *Northwestern Presbyterian*, a religious weekly publication, was a newspaper within the intent of a statute requiring notice of sale in foreclosure to be published in a "newspaper." The facts showed that the publication was issued once a week and contained principally religious news of especial interest to Presbyterians, but that it contained one column each week devoted to general news of the day, embracing every sort of news of interest to the general reader. In this case the court gives the following general definition of newspaper: "According to the usage of the business world and in ordinary understanding a newspaper is a publica-

tion usually in sheet form, intended for general circulation and published regularly at short intervals, containing intelligence of current events and news of general interest."

In 1888, in *Railton* v. *Lauder* (26 Ill. App. 655; affd., 126 Ill. 219), it was held that the Chicago *Daily Law Bulletin* was a secular newspaper of general circulation within the meaning of the statute requiring publication of notices to non-residents in attachment cases in "a secular newspaper of general circulation." An affidavit filed in this case showed that the Chicago *Daily Law Bulletin* was in general circulation throughout the city of Chicago and Cook county and State of Illinois among judges, lawyers, real estate dealers, brokers, merchants and business men generally, and while its columns were devoted largely to legal matters and court notices, yet it contained various advertising matters confined to no one calling or trade, and there was published in it also news and information of a general secular character.

Following this decision it was held in *Maass* v. *Hess* (41 Ill. App. 282) that the *National Corporation Reporter*, a weekly publication containing advertisements and reading matter mainly, but not exclusively relating to law and finance, of interest to corporations, was a newspaper.

In 1894 the Supreme Court of Michigan, in *Lynch* v. *Durfee* (24 L. R. A. 793), held that the *Wayne County Legal News* was a newspaper within the meaning of the statute requiring the publication of the notice of probate of wills in a "newspaper." The facts shown in this case were that the *Wayne County Legal News* was published weekly in the city of Detroit, and, while devoted primarily to the interests of the legal profession, yet it also contained matters of interest to the general public. It contained the proceedings of the Supreme Court of Michigan and the courts of Detroit, occasional opinions of the United States courts, also personal items of general interest and notices of passing events, a record of real estate transfers and mortgages, chattel mortgages and bills of sale, and advertisements relating to general trade, and had a general circulation among judges, lawyers, bankers, brokers, real estate agents, merchants and business men. The court says a newspaper means a "sheet of paper printed and distributed at short intervals for conveying intelligence of passing events; a public print that cir-

culates news, advertisements, proceedings of legislative bodies, public documents and the like."

The foregoing are the only decisions cited by counsel or found by me on a careful examination of the question.

The land in question is situate in the town of Lancaster, in Erie county. The sale was advertised to take place in the city of Buffalo.

Section 1678 of the Code of Civil Procedure requires that notice of sale in such case shall be given in the same manner as of a sale of real estate by the sheriff under execution, and section 1434, which regulates the sale of land by the sheriff by virtue of the execution, as applicable to the facts of this case, required that public notice of the sale " be conspicuously fastened up " in three public places in the town of Lancaster, and three public places in the city of Buffalo, at least forty-two days before the sale, and that a copy of the notice " be published at least once in each of the six weeks immediately preceding the sale, in a newspaper published in the county."

The facts stated in the affidavit and stipulation read on the motion bring this case within the cases cited sustaining publications of legal notices. While the principal news published in the *Daily Mercantile Review* is of especial value to attorneys, bankers, brokers, commission merchants and those engaged in the real estate business, yet it is shown by the affidavit and stipulation that several columns are devoted to general advertising, and to the publication of local and other news of general interest, and that it has a general circulation ; it is printed in sheet form, like other newspapers, and at frequent intervals.

A careful consideration of what constitutes a newspaper, as indicated by the definitions of the term and by the decisions of the courts as applicable to the facts of this case, leads to the conclusion that the *Daily Mercantile Review* is a newspaper within the meaning of the provision of the statute relating to the publication of notices in foreclosure actions.

It follows that the notice of sale was properly published.

The motion to compel the purchaser to complete his purchase is granted, but the question being a new one, costs are not allowed.