LE MASSENA v. STORM.

(Supreme Court, Appellate Division, First Department. June 7, 1901.)

1. SLANDER — ALLEGATION OF SPECIAL DAMAGE — PROOF OF GENERAL INJURY.

Where a complaint averred that, because of defendant's alleged slanderous utterances, plaintiff had failed to obtain certain contracts for printing, whereby he was damaged, but contained no allegation of general damage, he was not entitled to recover on evidence that his business had been injured generally.

2. SAME—STATEMENTS NOT ACTIONABLE PER SE.

Where plaintiff was engaged in soliciting and publishing legal notices in a certain paper, and defendant told certain of plaintiff's customers that such paper was "not a daily newspaper, within the meaning of the law relating to the publication of notices," such statement did not relate to the personal character or professional conduct of plaintiff, or necessarily tend to injure him in his business, and hence was not actionable per se.

Patterson, J., dissenting.

Appeal from trial term, New York county.

Action by William H. Le Massena, Jr., against Jules P. Storm. From a judgment in favor of plaintiff, and an order denying a motion for a new trial, defendant appeals. Reversed.

The complaint sets forth two causes of action, in each of which it is alleged that plaintiff is engaged in the business of publishing legal notices and advertisements in the Wall Street Journal, a daily newspaper published in the borough of Manhattan, and was the "absolute and exclusive owner of the entire and exclusive right to solicit and publish" all legal notices that he might be able to procure, and that defendant was engaged in similar business in competition with him. It is further, in the first cause of action, averred that defendant, speaking through the telephone to one Cryer of and concerning plaintiff and his business, wickedly, falsely, and slanderously said, "The Wall Street Journal is not considered a general newspaper, and the publication will be null and void," in consequence of which said Cryer refused to give plaintiff the contract to publish three other legal notices, to his damage in the sum of $5,000. In the second cause of action it is alleged that defendant falsely, wickedly, and slanderously uttered and published of and concerning plaintiff and his business, in the presence of one Donegan, who was a patron of plaintiff, the following: "The Wall Street Journal is not a daily newspaper. At least, it is not such within the meaning of section 1678 of the Code of Civil Procedure. The publication will be null and void, and the affidavit of publication in the Wall Street Journal will not be accepted in court,"—by reason of which Donegan has refused to enter into further contracts with the plaintiff for the publication of legal notices, to his damage in the sum of $5,000. Upon the trial, plaintiff gave evidence tending to show the utterance of the slanderous words as alleged. His evidence also showed that he induced the Wall Street Journal to embark in the publication of legal notices,—a business it had not theretofore engaged in,— and that he was constituted its sole soliciting agent for such notices, and was to be charged a certain rate for all notices of that character published by the paper, and to be at liberty to make an additional charge to the attorneys from whom he or the paper received such business. Just before the close of plaintiff's case, the record shows an admission of defendant's counsel that the Wall Street Journal is a "newspaper," and manifestly this was intended as an admission that it was such within the contemplation of section 1678 of the Code of Civil Procedure. Plaintiff failed to show the special damages alleged in the complaint, but he was allowed to show, under defendant's exception and objection to the evidence, as not pleaded, that his business fell off after the alleged slander. He was then permitted to testify, under objection, but without any exception being taken, that his business fell off

from $320 the preceding month to $17.80 the month following. The court denied the defendant's motion for a nonsuit, and it was not renewed at the close of all the evidence. In the course of the charge the court strongly intimated that there was no evidence of the special damages alleged. Plaintiff's counsel thereupon requested the court to charge that the words were actionable per se, and that no proof of special damages was necessary. The court assented to this statement of the law, but ruled that the complaint was insufficient. On motion of counsel for plaintiff, the court allowed the complaint to be amended so as to allege that plaintiff had sustained $5,000 general damages, to which ruling defendant's counsel excepted. The court had already instructed the jury that if the defendant made any false statement respecting the paper, which made it unworthy the patronage of lawyers, referees, and other persons interested in the publication of legal notices, then such false statements constituted actionable slander, and to this defendant's counsel excepted. After the amendment to the complaint, the court again charged the jury, and said, among other things, that if they believed that defendant uttered the false statements in disregard of plaintiff's rights, and sought to injure him, they might award vindictive damages. Defendant's counsel also excepted to this charge. The court, at the request of plaintiff's counsel, further instructed the jury that, if the words were actually slanderous, they were slanderous per se, and plaintiff was entitled to a verdict, the amount of which was to be determined by the jury.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Frederick L. C. Keating, for appellant.

John S. Wise, Jr., for respondent.

LAUGHLIN, J. The loss of business shown by the evidence not having been specially alleged, plaintiff was not entitled to recover therefor. Bosi v. Herald Co. (Sup.) 68 N. Y. Supp. 898; Langdon v. Shearer, 43 App. Div. 607, 60 N. Y. Supp. 193; Kraft v. Rice, 45 App. Div. 569, 61 N. Y. Supp. 368; Roberts v. Breckon, 31 App. Div. 431, 52 N. Y. Supp. 638. The real question presented by this appeal is whether, as to the plaintiff, these words were actionable per se. It will be observed that no reflection was made upon the character or honesty of plaintiff, in his business or otherwise. There is no suggestion, even, that he either innocently or knowingly misrepresented the facts or the law. The words uttered are merely an expression of opinion, or, at most, an assertion of law, that the Wall Street Journal is not a daily newspaper, within the meaning of the Code provisions concerning the publication of legal notices; and it is very doubtful whether they constitute a false representation of fact. Whether it was "a newspaper," within the meaning of section 1678 of the Code of Civil Procedure, depended upon the form and contents of the publication, and the extent of its circulation. Williams v. Colwell, 14 App. Div. 26, 43 N. Y. Supp. 720, 1167. It does not appear but that the parties to whom the slanderous words were uttered were as familiar with the facts relating to this question as was the plaintiff. It may be that in this particular instance, on account of the paper not being well known, damages flowed from these representations as to the character of the paper; but, were the newspaper well known, we think damages would not have been the necessary or probable result. Defamatory words are deemed actionable per se only where the necessary or natural and proximate cause of their utterance would be to cause

injury, and damages may be presumed. Cooley, Torts (2d Ed.) 228. Odgers, in his work on Libel and Slander (3d Ed., p. 59), says:

"Words which are clearly defamatory when written or published may not be defamatory when merely spoken. * * * Spoken defamatory words are actionable whenever special damage has in fact resulted from their use. They are also actionable when the imputation cast by them on the plaintiff is, on the face of it, so injurious that the court will presume, without any proof, that his reputation has been thereby impaired."

In Newell, Defam. (2d Ed.) p. 181, it is stated that:

"The real, practical test by which to determine whether special damages must be alleged and proven, in order to make out a cause of action for defamation, is whether the language is such as necessarily must, or naturally and presumably will, occasion pecuniary damage to the person of whom it is spoken."

Starkie (Folk. Starkie, Sland. § 11) says:

"The ground of an action for words, in the absence of special damage, is the immediate tendency of the words themselves to produce damage to the person of whom they are spoken, in which case presumption supplies the place of absolute proof."

In Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, the court adopts the classification of cases of actionable slander as defined in Onslow v. Horne, 3 Wils. 177, which is that:

"Slanderous words are those which (1) import a charge of some punishable crime; or (2) impute some offensive disease which would deprive a person of society; or (3) which tend to injure a party in his trade, occupation, or business; or (4) which have produced some special damage."

Under the authorities, we are of the opinion that these slanderous words were more in the nature of a slander of a newspaper than of the plaintiff. When the slander is of a property right or title, or of a thing, falsity of utterance, malice, and special damages flowing or resulting necessarily or naturally, as the proximate consequence, must be alleged and shown by the plaintiff, except in those cases where the slanderous words also impute to the owner dishonesty, fraud, deception, or other misconduct in his trade or business in connection with the property. Odgers, Lib. & Sland. (3d Ed.) pp. 30, 73, 88, 156; Newell, Defam. (2d Ed.) 203, 204, 208, 217; Townsh. Sland. & L. (4th Ed.) §§ 205, 206; Kendall v. Stone, 5 N. Y. 14; Like v. McKinstry, 41 Barb. 186; Evans v. Harlow, 5 Q. B. 624; Young v. Macrae, 3 Best & S. 264; Wilson v. Dubois, 35 Minn. 471, 29 N. W. 68. Odgers says (3d Ed., p. 30):

"Sometimes, also, an attack upon a thing may be defamatory of the owner of that thing, or of others immediately connected with it. But this is only so where an attack upon the thing is also an indirect attack upon the individual. If the words do not touch the personal character or professional conduct of the individual, they are not defamatory of him, and no action lies, unless the words fall within the rules relating to slander of title. * * * But to impute that the goods which the plaintiff sells or manufactures are adulterated, to his knowledge, is a distinct charge against the plaintiff of fraud and dishonesty in his trade."

Again, the learned author says (page 73):

"But it is not the law that any words spoken to the disparagement of an officer, professional man, or trader will, ipso facto, be actionable per se. Words, to be actionable on this ground, must touch the plaintiff in his office, profession, or trade; that is, they must be shown to have been spoken of

the plaintiff in relation thereto, and to be such as would prejudice him therein. They must impeach either his skill or knowledge, or attack his conduct therein."

In Tobias v. Harland, 4 Wend. 537, it was held not actionable per se to say of a watch manufacturer that the watches manufactured by him "are bad," inferior to those manufactured by others named, and that particular watches were bad. The court said, "The words charged do not directly impeach the knowledge, skill, diligence, or credit of the plaintiff;" and after considering many cases the court states this rule:

"It appears to me that when the words are spoken not of the trader or manufacturer, but of the quality of the articles he makes or deals in, to render them actionable per se they must import that the plaintiff is guilty of deceit or malpractice in the making or vending of them. The words used by the defendant here do not import such charge, nor do they amount to a charge of the want of skill. They do not assert that the defendant could not make or did not deal in good watches, or that he practiced any deceit in making them, by which purchasers were imposed on."

In Kennedy v. Publishing Co., 41 Hun, 422,—an action for libel in publishing an article which the court, on demurrer to the complaint, assumed was a charge that the plaintiff's saloon, at Coney Island, of which a cut was published, was the resort "of improper characters, and that the influence of associations had there was bad,"—the court held that it was a libel on the place, and not on the person, and as there was no allegation that the plaintiff conducted his saloon improperly, or that he was responsible for the character of the guests, all that was alleged might be true, without his fault. Cullen, J., writing for the court, stated the law as follows:

"It is settled by authority that a libel on a thing is not actionable unless the owner of the thing alleges and proves that he has sustained pecuniary loss as a necessary and natural consequence of the publication. Townsh. Sland. & Lib. par. 204; Tobias v. Harland, 4 Wend. 537. Though some of the cases seem in conflict with this principle, the conflict is more apparent than real. A libel on a thing may constitute a libel on a person. Thus, to say of a brewer that he adulterates his beer would be a libel upon him in his trade, not because the beer was bad, but because the language would import deceit and malpractice on the part of the brewer. It is therefore at times difficult to determine whether the publication attacks the person, or merely the thing, and any apparent conflict in the authorities arises out of this difficulty. There is no dispute as to the principle. The difference is only as to the application of the rule."

The Tobias and Kennedy Cases, supra, were recently followed by this court in Bosi v. Herald Co., supra, affirmed on the opinion at special term. That was an action for libel in publishing a cut of plaintiff's restaurant and boarding house, and stating that anarchists were in the habit of congregating there. In the opinion it is said:

"An examination of the publication fails to show any personal reflection on the plaintiff in the conduct of his business or otherwise, or responsibility on his part for the character of his guests. The libel is on the plaintiff's place of business, not on himself, and the rule in such case is that the plaintiff has no action unless he alleges and proves that he has sustained special damages as a necessary and natural consequence of the publication."

In Terwilliger v. Wands, 17 N. Y. 54, 72 Am. Dec. 420, the court say:

"The words must be defamatory in their nature, and must in fact disparage the character; and this disparagement must be evidenced by some positive loss arising therefrom directly and legitimately, as a fair and natural result. In this view of the law, words which do not degrade the character do not injure it, and cannot occasion loss."

In Dooling v. Budget Pub. Co., 144 Mass. 258, 10 N. E. 809, where the publication was that a dinner furnished by a caterer on a public occasion was "wretched," and was served "in such a way that even hungry barbarians might object," and that "the cigars were simply vile," and "the wines were not much better," it was held that the words were not actionable per se, as they did not import "any personal reflection upon the plaintiff in the conduct of his business"; the court saying, "Words relating merely to the quality of the article made, produced, furnished, or sold by a person, though false and malicious, are not actionable, without special damage." In Boynton v. Stocking Co., 146 Mass. 219, 15 N. E. 507, it was held that the publication of an article by a manufacturer cautioning the public not to form an opinion of goods of his manufacture from those advertised as "first quality" by a tradesman to whom they had been sold as "damaged" was not actionable, as an imputation on the tradesman's character.

In many cases it becomes difficult to apply these rules of law, and determine when the words are limited to a libel upon the property right, title, or thing, and are not actionable without proof of special damages, and when they become a libel on the owner as well, and are actionable per se. Within the doctrine of the authorities cited, we think the case belongs to the former class, and that the words are not actionable per se; and, the plaintiff having failed to prove special damages, the judgment must be reversed.

Judgment and order reversed, and a new trial granted, with costs to appellant to abide event. All concur, except PATTERSON, J., who dissents.