JOHN CRASHLEY, Appellant, *v.* PRESS PUBLISHING COMPANY et al., Respondents.

1. LIBEL — ACTION MAY BE MAINTAINED AGAINST RESIDENT OF STATE BY CITIZEN OF FOREIGN GOVERNMENT. The fact that the plaintiff is an English subject, or that he is a non-resident, is no objection to the maintenance of an action for libel brought by him against the proprietors of a newspaper published in the city of New York; as a personal action sounding in tort, the action is transitory in its nature and follows the person of the defendant.

2. WHEN ARTICLE CHARGING COMPLAINANT WITH TAKING PART IN REVOLUTION IN BRAZIL IS NOT LIBELOUS PER SE. A newspaper article charging the complainant with taking part in a revolt, or rebellion, within the government of Brazil, is not libelous *per se* without allegation and proof of the existence of some statute making such an act a treasonable offense and prescribing pains, or penalties, for the commission of the crime; the court cannot assume that the laws of Brazil are similar to the common law upon the subject of treason to the state, since the presumption that the common law is in force is only indulged in by our courts with reference to England and those states which have taken the common law from England.

3 SAME — WORDS DESCRIBING COMPLAINANT AS PERSON "OF MORE OR LESS INDIFFERENT REPUTE" NOT LIBELOUS PER SE. Words describing the plaintiff as "an Englishman of more or less indifferent repute" cannot be held libelous *per se* where the complaint fails to allege the

libelous meaning by innuendo, since without such innuendo the words signify nothing except that the plaintiff had no particular reputation one way or the other, either good or bad.

4. WHEN PUBLICATION NOT LIBELOUS PER SE, SPECIAL PECUNIARY DAMAGES MUST BE·ALLEGED. Where the complaint in an action for libel shows no publication actionable *per se*, it must allege special pecuniary damages; allegations to the effect that, by reason of the publication, the plaintiff was subjected to insult and annoyance and to arrest, and that by reason thereof his business was damaged and suffered irreparable loss, are insufficient when the complaint does not allege what, if any, pecuniary loss was occasioned thereby.

*Crashley* v. *Press Publishing Co.*, 74 App. Div. 118, affirmed.

(Argued May 10, 1904; decided June 14, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 21, 1902, which affirmed a judgment in favor of the defendants entered upon a dismissal of the complaint by the court at a Trial Term.

The action was brought to recover damages of the defendants for the publication of an article in " The World," a daily newspaper published in the city of New York, which the plaintiff alleges to have been libelous.    The complaint alleges that the plaintiff was a subject of the queen of England and was not a resident of the state of New York ; but that, at the time of the publication of the article complained of, he was a resident of Rio de Janeiro in Brazil, South America.    The article is one, which purports to have been written and sent to the newspaper, in 1894, by one of its correspondents in Rio de Janeiro, and makes reference to a " naval war," or revolt, which had taken place.    It states that " the headquarters of the revolution were in a small boatshop in the Rua Ouvidor, kept by a certain Crashley, an Englishman, of more or less indifferent repute."    It states that " Crashley's 'right bower' was an old padre named Vilas, who had been knighted by the emperor, and longed for the restoration of the empire, while his ' left bower ' was a certain Captain Jones, the harbor man for the Lamport & Holt English Steamship

Company." It states that Da Gama, the insurgent leader, had set about raising money in aid of the revolt and had "issued a circular to the effect that, in the event of the revolt's success, the new government would turn the Brazilian National Railway, which is owned by the government, and is one of its largest sources of revenue, into a stock corporation, and issue stock in payment of all loans contracted by the insurgents;" that "he agreed, through his agents, the Bank of Rio de Janeiro, which existed only in name, but which was really the Crashley crowd, to issue in return for the payment of gold in any sum, from £1 up, a receipt which would entitle the holder to shares of stock equal in value to three times the amount contributed to the rebel funds;" that "thousands of the English and Portuguese bit at the tempting bait; gold poured into the treasury. Nearly every Englishman, and the majority of the Portuguese, from the humblest bank clerks to the capitalists, invested in the enterprise, which, through the plausible rumors circulated by the Crashley crowd, seemed sure of success." The article states that, provisions and ammunition getting low, the conspirators started in with renewed energy and the "Crashley mill was set to work grinding out more lies against the government;" that the English minister helped along the conspiracy and, "after every fresh lie from Crashley's, would call a meeting of the diplomatic corps, and beg his confreres to urge upon their governments the recognition of Da Gama as a belligerent." These are the statements which directly refer to, or affect, the plaintiff. The complaint alleged "that the said publication in said newspaper concerns the plaintiff herein, in that among other reasons the persons referred to in the statement 'that the headquarters of the revolution were in a small boatshop in the Rua Ouvidor kept by a certain Crashley, an Englishman, of more or less indifferent repute' is especially meant to and is intended to identify the plaintiff herein, and that, among other reasons, the said plaintiff as the time of said publication was the only Crashley having a shop in Rua Ouvidor referred to in said publication; and also in that among other

things, the 'Crashley Crowd' and the 'Crashley Mill' mentioned throughout the said publication are also meant to refer to and are intended to identify the plaintiff herein." The complaint alleged the falsity of the statements as to his connection with the revolution; that the publication subjected him "to insult and annoyance" and that "at different times and places" he was "repeatedly insulted, to his great annoyance and humiliation." It was alleged "that by reason of the said publication * * * this plaintiff has been arrested and charged with the facts alleged against him in said publication" and "remained under arrest for the space of seven days, and was debarred from communicating with anyone, and by reason of the said publication * * * the place of business of this plaintiff has also been searched by the police authorities of said City of Rio de Janeiro, and this plaintiff's only partner, Henry Hardwick, was also arrested, and remained under arrest for seven days; and by reason of said search and of this plaintiff's and his partner's arrest the said business of this plaintiff remained in the hands of mere clerks, unacquainted with the management of said business; wherefore his business was damaged and greatly suffered."

When the case was reached for trial, upon the opening by the plaintiff's counsel, the complaint was dismissed; the trial judge holding that the allegations of the complaint were insufficient to establish that the publication was libelous. Upon appeal the Appellate Division, in the first department, affirmed the judgment dismissing the complaint and the plaintiff has further appealed to this court.

*Lorenzo Ullo* for appellant. The Supreme Court of this state has jurisdiction over the subject-matter of this suit. (5 Am. & Eng. Ency. of Law [2d ed.], 119; Townshend on Slander & Libel [4th ed.], 91; Newell on Slander & Libel [2d ed.], 225; *Trumbull* v. *Gibbon,* 3 City Hall Rep. 97; *Mills* v. *State,* 18 Neb. 575; *Witchen* v. *Jones,* 17 N. Y. Supp. 491; *Hinney* v. *Roberts,* 26 Hun, 166; *Gardner* v. *Thomas,* 14 Johns. 134; *Devitt* v. *Buchanan,* 54 Barb. 31;

*Lister* v. *Wright*, 2 Hill, 320.) The publication is libelous *per se.* ( *Woldegrove* v. *Agas*, Cro. Eliz. 191 ; *Lewis* v. *Coke*, Cro. Jac. 424 ; *Stapleton* v. *Frier*, Cro. Eliz. 251 ; *Redston* v. *Eliot*, Cro. Eliz. 638 ; *Charter* v. *Peter*, Cro. Eliz. 602 ; *Trevilian* v. *Wilman*, Style, 400 ; *Fry* v. *Carne*, 8 Mod. 283 ; *How* v. *Prin*, Holt, 652 ; *Moore* v. *Bennett*, 42 N. Y. 472 ; *Cooper* v. *Greely*, 1 Den. 358 ; *Spencer* v. *Southwick*, 11 Johns. 592 ; *Fidler* v. *Delaver*, 20 Wend. 57.) The *lex fori* governs when no foreign law is pleaded. (Story's Conf. of Laws [8th ed.], § 625 ; *Dennick* v. *C. R. Co.*, 103 U. S. 11 ; *Whitford* v. *P. R. R. Co.*, 23 N. Y. 465 ; *McDonald* v. *Mallory*, 77 N. Y. 546 ; *Leonard* v. *C. S. N. Co.*, 84 N. Y. 48 ; *Wooden* v. *W. N. Y. & P. R. R. Co.*, 126 N. Y. 10.)

*James W. Gerard, John M. Bowers* and *Manfred W. Ehrich* for respondents. The article complained of is not libelous *per se.* The complaint does not plead that rebellion is a crime under the laws of Brazil. (*Bundy* v. *Hart*, 46 Mo. 460 ; *Barkley* v. *Thompson*, 2 Penn. 148 ; *Wall* v. *Hoskins*, 5 Ired. [N. C.] 177 ; *Sparrow* v. *Maynard*, 8 Jones [N. C.], 195 ; *Tinville* v. *Earlywine*, 4 Blackf. 470 ; *Stout* v. *Wood*, 1 Blackf. 71 ; *Savage* v. *O'Neill*, 44 N. Y. 300 ; *Thompson* v. *Ketcham*, 8 Johns. 146.) To sustain an action for libel with special damages, the injury complained of must be a pecuniary one. (*Beach* v. *Ranney*, 2 Hill, 312 ; *Pettibone* v. *Simpson*, 66 Barb. 493 ; *Chamberlain* v. *Boyd*, L. R. [11 Q. B. D.] 407 ; *Roberts* v. *Roberts*, 33 L. J. Q. B. 249 ; *Barnes* v. *Prudlin*, 1 Siderfin, 396.) The special damage complained of is not the natural and proximate result of the publication. The plaintiff, therefore, fails to make out a case for libel with special damages. ( *Vicars* v. *Wilcocks*, 8 East 1 ; *Lynch* v. *Knight*, 9 H. L. Cas. 577 ; *Hoey* v. *Felton*, 11 C. B. [N. S.] 142 ; *Crain* v. *Petrie*, 6 Hill, 522 ; *Hallock* v. *Miller*, 2 Barb. 632 ; *Anonymous*, 60 N. Y. 264 ; *Terwilliger* v. *Wands*, 17 N. Y. 54 ; *Carpenter* v. *P. R. R. Co.*, 13 App. Div. 328 ; *Jex* v. *Straus*, 122 N. Y. 293.) The plaintiff's plea of special damage is insufficient. The statement that

his business was damaged and greatly suffered will not suffice; he should state the names of customers whose business he lost, or the particular transactions which he lost by reason of the publication complained of. (*Bosi* v. *N. Y. H. Co.*, 33 Misc. Rep. 622; *Erwin* v. *Dezell*, 64 Hun, 392; *Hallock* v. *Miller*, 2 Barb. 631; *Langdon* v. *Shearer*, 43 App. Div. 607.)

GRAY, J.  I think that the judgment below was right. Admitting all the material allegations of fact in the complaint, as we must, a case was not made out.

There is no objection to the maintenance of the action in our courts in the fact that the plaintiff was an English subject, or that he was a non-resident.  As a personal action, sounding in tort, it was transitory in its nature; following the person of the defendant.  Our courts were open to the plaintiff for the redress of any personal injury, suffered by reason of the defendants' acts.  (Story's Conflict of Laws, § 625; Wharton's Conflict of Laws, §§ 478, 707, 743; *Gardner* v. *Thomas*, 14 Johns. 134; *De Witt* v. *Buchanan*, 54 Barb. 31.)  .

The article was not libelous *per se*.  To complain of an article as being libelous, because charging the complainant with taking part in a revolt, or rebellion, within the government of Brazil, is quite insufficient, in the absence of an allegation of the existence of some statute, making such an act a treasonable offense and prescribing pains, or penalties, for the commission of the crime.  The court cannot assume that the laws of Brazil are similar to the common law upon the subject of treason to the State.  That the plaintiff was an alien resident within the government of Brazil is not material, in considering his right of action; inasmuch as his alienage may not, probably would not, have been available as a defense.  (See case of *McLean*, 26 How. State Trials, 747.) The difficulty is that the complaint does not allege what was the law of Brazil, with respect to the commission of the acts charged in the article, and the presumption that the common law is in force is only indulged in by our courts with reference

to England and those states, which have taken the common law from England. (*Savage* v. *O'Neil*, 44 N. Y. 298.) Whatever relation the plaintiff may have had to the historical events happening in Brazil, their nature is not to be determined by the laws of the state of New York and, as Mr. Justice PATTERSON well observes, speaking for the Appellate Division, " to state in an article that a person, under such circumstances, was associated with a movement in a foreign country against the government of that country, or of some department or locality of it, does not, of necessity, accuse him of a crime." If the article had imputed to the plaintiff the commission of that which is an heinous offense against organized society, and commonly known to be recognized as such by civilized nations ; if it charged him with some conduct, which reflected upon his character, in such wise as to expose him to contempt, ridicule, or disgrace, it would be libelous *per se.*

At first thought, it might not seem that to charge a person with being in sympathy with a revolution, or with abetting it, in a South American state, was to impute to him anything infamous, or disgraceful. It would, or might, occur to us that, historically, the state of political ferment and effervescence in South American governments has appeared to be, almost, continuous. Uprisings to throw off the yoke of the oppressor, or the intolerable burden of a corrupt administration, have been of frequent occurrence. If to say of a person resident, or native, of some one of the South American republics, that he had been concerned, or engaged, in a revolt against the constituted authorities, would be to impute to him conduct disgracing him in the eyes of the community, not many of the population might be free from reproach. But history teaches us that there, as elsewhere, there have been numerous instances of persons, whose leadership, or participation, in a revolt against the government, has exalted them in the public eye, because regarded as having devoted, or sacrificed, themselves in a heroic effort to right some great political wrong and to bring about a freer enjoyment of political rights, or a more moral administration of government. This plain-

tiff, personally, may have been motived by such high princi-
ples and yet his following, or the "crowd" associated with
him, may have been sordidly interested. The article does
not state that of him; however it does impute sordid interests
to his "crowd." I do not think that to attach his name to
the coterie, which surrounded him, was to impute to him
their personal defects, or moral turpitude.

But it is argued that the words in the article, describing the
plaintiff as "an Englishman of more or less indifferent
repute," were libelous *per se.* If the complaint had alleged
the libelous meaning by innuendo, to wit, that the words meant
that the plaintiff's reputation, or character, was bad, that
would have been so. As a mere statement, however, without
innuendo, the language signifies nothing, except that the per-
son spoken of had no particular "repute," one way or the
other, or that he had but an ordinary reputation, or that he
was too obscure to have gained any repute. Many persons,
possessing excellent characteristics, might find themselves in
that category.

The complaint, showing no publication actionable *per se,*
is defective for alleging no special pecuniary damages. (*Stone*
v. *Cooper,* 2 Den. 293, 299.) There are allegations to the
effect that, by reason of the publication, the plaintiff was sub-
jected to insult and annoyance and to arrest. That is not
enough. When he alleges damage, it is generally and with
reference to his business. The allegation is that, by reason of
a search by the police and of the arrest of the plaintiff and
of his partner, the "business of this plaintiff remained in the
hands of mere clerks unacquainted with the management of
said business, wherefore his business was damaged and greatly
suffered irreparable loss." What, if any, pecuniary loss was
occasioned thereby is not alleged.

I think that the complaint failed to state a cause of action
and I advise the affirmance of the judgment, with costs.

PARKER, Ch. J., BARTLETT, VANN, CULLEN and WERNER,
JJ. (and MARTIN, J., in result), concur.

Judgment affirmed.