ADOLF PHILIPP CO. v. NEW YORKER STAATS–ZEITUNG. (No. 6634.)

(Supreme Court, Appellate Division, First Department. December 31, 1914.)

1. LIBEL AND SLANDER (§ 89*)—PLEADING—SPECIAL DAMAGES.

Where, in an action for libel by a theater corporation, the complaint alleged that by reason of the libel it had sustained loss of patronage, and lost a favorable sale of the English rights to a production, but did not charge the amount plaintiff had been offered for such rights, nor make any allegation of any particular loss of box receipts, there was no sufficient allegation of special damages, within the rule that, if special damages are claimed, they must be expressly alleged and with such particularity as to enable defendant to meet the charge.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 213, 214; Dec. Dig. § 89.*]

2. LIBEL AND SLANDER (§ 89*)—CAUSE OF ACTION—NATURE OF LIBEL.

A cause of action for libel, in the absence of allegation of special damages, is not stated, unless the words are libelous per se with respect to plaintiff.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 213, 214; Dec. Dig. § 89.*]

3. LIBEL AND SLANDER (§ 82*)—APPLICATION TO PLAINTIFF—INNUENDOES—PLEADING.

Where plaintiff corporation was organized to operate a German theater by P., who was an actor, playwright, and theatrical manager, and sued defendant for libel concerning a play produced at such theater, a complaint alleging that plaintiff was lessee of the theater and was producing the play there was sufficient to show that the libel was published of and

concerning plaintiff, and hence innuendoes, to show such application, being superfluous, were harmless.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 187–197; Dec. Dig. § 82.*]

4. LIBEL AND SLANDER (§ 6*)—RIGHT OF ACTION—LIBEL AGAINST PERSON OR THING.

Libelous words, written of a theater or play, as distinguished from the person or corporation producing it, or their business, and the nature and management thereof, are not actionable.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 3–16; Dec. Dig. § 6.*]

5. LIBEL AND SLANDER (§ 73*)—WORDS LIBELOUS PER SE—CORPORATIONS.

An article may be libelous per se against a corporation, if it is malicious and false, and will injuriously affect the corporation's business or credit.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 174; Dec. Dig. § 73.*]

6. LIBEL AND SLANDER (§ 9*)—CORPORATIONS—ELEMENTS.

Injury to a corporation's business reputation and credit, as distinguished from character and reputation, are the essential elements of a libel against the corporation.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 80–90; Dec. Dig. § 9.*]

7. LIBEL AND SLANDER (§ 97*)—COMPLAINT—DEMURRER.

A demurrer to a complaint for libel admits the facts alleged, including the application of the words published, as charged in the innuendo, in so far as they are susceptible of the meaning so ascribed to them; but an innuendo can neither extend nor enlarge the publication, and if the article is not libelous on its face, with appropriate innuendoes, and becomes so only by reference to extrinsic facts, such facts must be alleged in traversable form; but if the article is libelous per se, or may be on the facts as found, it is immaterial whether it is susceptible of another meaning, ascribed in the innuendo.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 234–236; Dec. Dig. § 97.*]

8. LIBEL AND SLANDER (§ 41*)—FREEDOM OF PRESS—QUALIFIED PRIVILEGE—THEATRICAL PRODUCTIONS—DISCUSSION.

The press has a qualified privilege to discuss and criticise the management of and productions at a theater, which privilege, in the absence of actual malice, extends to ridicule and is without limitation; but if the discussion or criticism exceeds fair and honest criticism, and becomes an intemperate, aspersive attack on the motive of the management of the theater or the character of the production, a malicious motive may be inferred, and, if found, the publication is beyond the privilege, and will be actionable, unless justified by absence of malice, or by pleading and proof of the truth.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 127–129; Dec. Dig. § 41.*]

Dowling and Scott, JJ., dissenting.

Appeal from Special Term, New York County.

Action by the Adolf Philipp Company against the New Yorker Staats-Zeitung. From an order overruling defendant's demurrer to plaintiff's amended complaint, and granting plaintiff's motion for judgment on the pleadings, but with leave to defendant to withdraw the demurrer and answer, it appeals. Order reversed, in so far as it over-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ruled the demurrer to the first, second, and ninth causes of action, and otherwise affirmed, with leave.

This is an action for libel. The plaintiff pleaded nine separate causes of action. The defendant demurred to each on the ground that it fails to state facts sufficient to constitute a cause of action.

It is alleged in each count of the complaint that the plaintiff is a domestic corporation and the lessee of a theater at 205–207 East Fifty-Seventh street, in the borough of Manhattan, New York, known as the "Adolf Philipp 57th Street Theater," and that its business consists in maintaining and conducting that theater as a German theater, and in producing therein plays exclusively in the German language for profit, and that it depends for its patrons and income entirely upon the German-speaking people; that Adolph Philipp is a well-known author of German plays and a composer of music and a German actor and singer, and for upwards of 20 years last past has been connected with and has acted in German plays in the city of New York and elsewhere, and has achieved a great reputation and high esteem among the German people and German theater goers in particular, for which reason the plaintiff was incorporated under his name and he was elected its president, treasurer and manager, and the plaintiff has secured his services as an author, producer, composer, and singer, and procured said theater to be erected and took possession thereof under a binding lease for 21 years from October 1, 1912, and named the theater with a view to obtaining the benefits and advantages of the good name of Philipp, and has made large expenditures in the establishment of its business; that it opened the theater for the purpose of rendering performances therein in the German language on or about the 24th day of November, 1912, and successfully produced therein in the German language several plays adapted and staged by said Adolf Philipp, and that thereby said theater became widely known and highly reputed and esteemed by the public at large and German theater goers as a German theater of high class and wholesome entertainment and amusement in the German language; that the theater was successful and became a source of large income, revenue, and profit to the plaintiff; that owing to these facts the managers of English productions became accustomed to visit said theater whenever a new production was presented and to buy the English rights therefor on the basis of a royalty to plaintiff, and that royalties received from such source afforded plaintiff additional income and profit, all of which was known to the defendant; that prior to the month of January, 1914, the plaintiff, at a great expenditure of money, procured a certain play in the German language based upon the controversy shortly theretofore reported in the defendant's and other newspapers between several of the officers of the German army and some of the civilian residents of Zabern, in one of the provinces of the German Empire, which play was revised and adapted for the plaintiff by said Philipp, and was produced by the plaintiff at said theater under the title of "Zabern" on the 28th of January, 1914, at an outlay of over $5,000, and proved to be a great success, and was attended by many Germans residing in the city of Greater New York and vicinity, all of whom expressed their appreciation of the play and of the production and performance thereof, and that by reason thereof the production of the play at the plaintiff's theater became widely known, well liked, and frequently visited by many of the German theater goers until shortly after the first publication of which the plaintiff complains; that after several performances of the play a well-known manager and producer of English plays negotiated with plaintiff and offered to buy the rights for the English production of the play, "which the plaintiff was about to sell to him upon terms and conditions greatly advantageous and remunerative to this plaintiff"; that by reason of the publication by defendant of the article, of which complaint is made, and the impression it was calculated and intended to make upon the German theater goers and the public at large, known as "German-Americans," the offer theretofore made to the plaintiff by the prospective purchaser of the English rights of the production was withdrawn, specifically on the ground that the prospective purchaser feared to undertake the production of the play in English lest he incur the enmity and hatred of the

public, who had been enraged against the play by said publication, and that thereby "this plaintiff was deprived of the benefits of the English rights of production of the said play 'Zabern,' to the damage of this plaintiff in royalties and compensation to the extent of many thousands of dollars"; that the defendant is a domestic corporation, and owns and publishes in the city of New York three newspapers in the German language, namely, a morning edition known as the "New Yorker Staats-Zeitung," an evening edition known as the "Abendblatt der New Yorker Staats-Zeitung," and a Sunday edition known as the "Sonntagsblatt der New Yorker Staats-Zeitung," which have a very large circulation and were and are issued in several editions daily, and are daily read by several thousand German-speaking people throughout the United States, and particularly and mainly within the city of New York.

It is then alleged in each count that the alleged libel of which complaint is therein made was *falsely, wickedly, and maliciously composed, printed, and published* in the German language *and circulated* broadcast "of, and concerning the plaintiff, its theater, its officers, its business, and its property," and that the defendant at the time of the publication was well aware of the facts hereinbefore stated, and composed and published the articles *with malicious and wicked intent to injure the plaintiff "in its business" and "in the good name and reputation of" its said theater and of said play, and "to bring the plaintiff's theater and its business and the said play 'Zabern' into public scandal, infamy, and disgrace, and to hold this plaintiff, its officers, its business, and" said play, which it owned, "up as an object of hatred, ridicule, contempt, and obloquy."* Following the quotation of the alleged libelous article, it is alleged in each count, in substance, that the publication was widely circulated in the city of New York, and in other cities and states of the Union, and was read and understood by hundreds of thousands of German-speaking people, which caused "the plaintiff, its theater, and the said play 'Zabern' to be condemned, shunned, and boycotted by all German theater goers, including those who, prior to the said publication, visited, appreciated, and lauded the plaintiff's theater and its productions, and, as a result thereof, the German public ceased to patronize the plaintiff's theater and the said performance of 'Zabern,' causing this plaintiff great damage and injury in its good name and reputation with the German theater goers and great financial loss in its said business"; that the publication caused and provoked the "German theater goers in the city of New York and vicinity to shun and avoid the plaintiff's theater and to withhold their patronage from the plaintiff and its said business," and caused and incited each of several German societies and associations "to adopt and promulgate among its members resolutions censuring the plaintiff and its production of said play 'Zabern,' and calling upon its members and other German societies to boycott and withhold their patronage and support from the plaintiff's said theater," to its great damage.

The first article is alleged to have been published in the New Yorker Staats-Zeitung on the 29th day of January, 1914, and the English translation thereof, with the innuendoes in parentheses, is as follows:

### "Zabern.

"Well, last night there was given by Adolf Philipp (meaning the president and treasurer of the plaintiff), in the 57th Street Theater (meaning the said plaintiff's theater), 'Zabern,' a military drama, in three acts, by F. Schumacher, the great bait, still more, German-baiting (meaning and charging that the said play 'Zabern' has for its object baiting or harassing or annoying of the Germans). * * * After the second act (meaning the second act of the play 'Zabern') the first night claque had hardly begun (meaning and intending to convey that the public applause was not genuine, but persons were hired to applaud), there was Manager Philipp (meaning the president and treasurer of the plaintiff) already on the stage. He declared it to be a true pleasure to prove how unpartisan the play was maintained. This downright insult (meaning that the statement attributed to Mr. Philipp was an insult to the intelligence of the audience) was superfluous. Whoever of those present yesterday (meaning the audience who witnessed the performance) had the German feeling—and that is, indeed, thank God, the

strong point of the German-American—had it clearly before him already that 'Zabern' (meaning the play produced by the plaintiff) is a point-blank, malevolent, biased play (meaning that the play was maliciously biased against Germans), not as Mr. Philipp (meaning the plaintiff's president and treasurer) expressed it, 'a free word in a free land.' To characterize that thing in short (meaning the play 'Zabern') one can, indeed, say an anti-German play (meaning that the play 'Zabern' is principally anti-German), which ostensibly plays in Alsace in front of a scenic design that comes from 'Auction Pinochle,' and depicts Russian conditions (meaning thereby to ridicule the said play by referring to it as a 'thing' and the production thereof, by imputing to the plaintiff an intent to make the audience believe that a scene from an old play, 'Auction Pinochle,' represents a scene in Alsace, and to incite ill-feeling and hatred on the part of the German-American population against the plaintiff and its said business, by asserting and conveying the belief that cruel and barbaric methods, usually attributed to the Russian government, are depicted in the play 'Zabern' as being practised by the German government). * * * Only that at the end (meaning at the end of the play 'Zabern') the one recruit, the grandson of an Alsace-French veteran of war, is especially shot to death before his grandfather and his sweetheart, is back-stairs romance fiction, and affects, even without mentioning that in this act (meaning the last act of 'Zabern') the tricolor (meaning the French flag) is glorified and the black-white-red flag (meaning the German flag) is figuratively trampled under foot, like the typical stir-mush (meaning and intending thereby to ridicule the said play 'Zabern' as a composition of fiction called the back-stairs romance variety, which appeals to the lower classes, and that the whole play is a senseless and uninteresting conglomeration referred to as a 'stir-mush,' and meaning and intending to incite hatred in the hearts and minds of the patriotic German population in this country against the plaintiff and its business, by asserting that in the play 'Zabern' the German flag is being insulted and derided to an extent equal to that of trampling under foot)."

The second article is alleged to have been published in the Sonntagsblatt der New Yorker Staats-Zeitung on the 1st day of February, 1914, and the English translation, with the innuendoes, is as follows:

"If after my thorough utterance on Thursday (meaning and referring to the utterance hereinbefore quoted in paragraph fifth of this complaint) concerning 'Zabern,' the so-called military play by F. Schumacher, for which (meaning the play 'Zabern') Mr. Ad. Philipp (meaning the president and treasurer of the plaintiff) has taken out an American copyright and which (meaning the play 'Zabern') he (meaning the said president and treasurer of the plaintiff) has presented to the German theater goers, I still find space here for a supplemental remark, it is this: * * *

"We leave as undecided what a German theater manager (meaning and referring to the plaintiff) actually has in view by the production of 'Zabern' (meaning the play 'Zabern'), whether he too (meaning the plaintiff's president as producer of the said play 'Zabern') has only an eye for mammon or if he (meaning plaintiff's president and treasurer) even gazed toward Paris with button-hole ache (meaning a craving for honors from France), he has at least earned the red ribbon, if not, indeed, the rosette (meaning and intending to ridicule the plaintiff and its officers, and provoke and excite the German population in this country against the plaintiff and its president, Adolf Philipp, who produced the play 'Zabern,' by charging and intending to convey that the plaintiff and its said officer in producing the said play 'Zabern' followed two selfish motives, greed for money and desire for honors from Paris, France, for ridiculing and abusing Germany by the production of the play 'Zabern'). No French, German-hating 'shoemaker' could have so quickly cobbled together so biased a play (meaning the play 'Zabern'), in which (meaning the play 'Zabern') a still quivering, bleeding wound of Germany is made a show of (meaning and intending to convey that the play 'Zabern' produced by the plaintiff is worse and more biased against Germany than any such as might have been composed by any 'shoemaker' who hates Germany, the word 'shoemaker' in quotation marks being used to impute to

a person roughness and ignorance). And in New York (meaning in the adaptation of the play 'Zabern' by the plaintiff) there was then evidently stirred into the thick sticky mush of the play (meaning the play 'Zabern') all sorts of so-called 'spice,' all sorts of worn-out burlesque, which already served in various Philipp-kind popular plays (meaning that indecent, commonly known as spicy, matter from other plays formerly produced by Adolf Philipp was used in the play 'Zabern'). This (meaning the matter alleged to have been stirred into the play 'Zabern') is worse than the Schumacher-kind caricature (meaning the original play 'Zabern') of the evil 'Zabern' chapter (meaning the occurrences at Zabern on which the play was founded).

" 'Zabern' (meaning the play 'Zabern'), as one sees it in 57th street (meaning the plaintiff's theater), with the scenery of an upper Italian mountain lake, with its North German, Bavarian, and Austrian 'Alsatians,' its caricatures in uniform (meaning and intending to ridicule and incite hostile feeling of the German-Americans against the plaintiff's production of the play 'Zabern' by asserting that caricatures in uniforms are therein represented as German officers), is no play; it is a lampoon. One could crack as miserable jokes about it (meaning the play 'Zabern'), were not the whole matter, and even more, the production of this play (meaning the play 'Zabern') in New York (meaning at the plaintiff's theater) so lamentable a matter to the perceptive German-Americans (meaning the German residents in America who uphold the dignity of their nationality)."

The third article is alleged to have been published in the New Yorker Staats-Zeitung on the 3d day of February, 1914, and the English translation, with the innuendoes, is as follows:

"Against 'Zabern' (meaning the play 'Zabern' produced by the plaintiff).

"The German Kriegerbund protests against 'insults to German officers' (meaning that the production of the play 'Zabern' by the plaintiff was an insult to German officers).

"That the Zabern affair (meaning the occurrence at Zabern) is also playing over here to us was noticed last week, when the comedy 'Zabern' attained its first American production at Philipp's Theater (meaning the plaintiff's theater). The board of managers of the German Kriegerbund (a certain German society entitled Kriegerbund, which means in English 'Warriors' League'), * * * presided over by Pres. Chr. Rebban, yesterday unanimously adopted the following resolution, after the gentlemen had rendered their report of their visit to the theater (meaning the plaintiff's theater) and the things which they have there seen and heard (meaning at the performance of the plaintiff's production of 'Zabern'):

" 'Whereas, the military play entitled "Zabern," which is being produced every evening in the German theater managed by Adolf Philipp (meaning and referring to the president and treasurer of the plaintiff corporation), at 57th street, near Third avenue (meaning and referring to the plaintiff's theater, which (meaning the plaintiff's play 'Zabern'), because of the frivolous, shameless, and impure representations of the German military scandal, must excite public vexation in all well-thinking German-Americans (meaning the German population in this country and intending to excite and provoke hostile sentiment among such German-Americans against the plaintiff's business for its alleged unpatriotic tendency, and to incite and create hatred of the German public against the plaintiff and its officers, the adapter of the play 'Zabern,' by asserting and seeking to create an impression that the play 'Zabern,' produced by the plaintiff, intentionally and brazenly, by impure and immoral motives, so misrepresents and derides the German military, to its discredit, disparagement, and detriment, as to hurt the feelings of every well-thinking German living in America); and

" 'Whereas, in this play (meaning the play 'Zabern' produced by the plaintiff) the German army, and especially the position of its officers, is being derided, ridiculed, and slandered in the unworthiest manner, the German flag having been trampled under foot in the mud (meaning to provoke the German public against the plaintiff's production by charging that in the play 'Zabern' the German flag is being publicly and intentionally abused), that

even the German imperial family (Kaiserhaus) was through a falsely composed telegram of the Kronprinz (meaning the Crown Prince of the Empire of Germany) drawn into this scandalous performance (meaning the performance of the play 'Zabern,' and intending to create ill feeling and hostility against the plaintiff's theater and the performance rendered therein, by intimating and giving the impression that in said play 'Zabern' the Crown Prince of the Empire of Germany is falsely represented as having sent a certain telegram, the contents of which were falsely composed, for the purpose of·casting reflection upon and discrediting the German Crown Prince and the German imperial family on a public stage before an audience of German people); and

" 'Whereas, on account of this nightly repeated play, our entire population (meaning the German population) is damaged in its esteem of other nations in this country (meaning the United States of America, and charging that the play 'Zabern,' produced by the plaintiff, depicts and represents the Germans in such an offensive and disparaging light as to incite and cause disrespect and hatred 'of the German population in this country by people of other nationalities); so

" 'Be it resolved, that the German "Kriegerbund" (Soldiers' or Warriers' League) quite energetically rise in protest against further performance of this scandalous play (meaning the play 'Zabern' produced by the plaintiff), and all German societies be requested to adopt similar energetic resolutions, and that every German, who still has some national pride in him, must stay away from such scandalous play (meaning and intending to convey to the public that the play 'Zabern,' produced by the plaintiff herein, is so scandalous and abusive to the Germans, and is intended to so hurt the feelings and the national pride of every German, as to make said play unfit to be seen by any German, and meaning to urge and urging all German societies to adopt resolutions whereby their members will be pledged not to visit the performance of the said play 'Zabern' at the plaintiff's theater, and meaning to intimidate and intimidating every German that, if he visited the said play 'Zabern' at the plaintiff's theater, he would be deemed by his countrymen to be void of national pride).' "

The fourth article is alleged to have been published in the Abendblatt der New Yorker Staats-Zeitung on the same day, and it is precisely the same as the third article.

The fifth article is alleged to have been published in the Abendblatt der New Yorker Staats-Zeitung on the 6th day of February, 1914, and the English translation, with the innuendoes, is as follows:

### "New York German Druggists' Society.

"At the meeting of the New York German Druggists' Society held on February 5th, 1914, ex-Pres. Schleussner proposed the following resolution, which was unanimously adopted:

"With indignation the members of the New York Druggists' Society have taken cognizance of the fact that a local 'German theater manager (meaning the plaintiff) has made use of the Zabern occurrence (meaning the occurrence at Zabern reported in the newspapers as aforesaid) in the most disgusting manner as an object of sensation, solely for the sake of the beloved dollar, to make profit out of the same. It is this lamentable occurrence (meaning the production of the play 'Zabern' at the plaintiff's theater), a direct blow in the face to all those who have guarded their pride in their German parentage (meaning and intending to provoke ill feeling of the German-Americans against the plaintiff and its said theater and its production by charging that the production of the play 'Zabern' by the plaintiff was intended as a gross insult to the pride of the German population here). Our society, which has always upheld its German spirit, cannot refrain from condemning, in the severest manner, this conduct, devoid of every feeling of decency (meaning the plaintiff's act in producing the said play 'Zabern').

"The Druggists' Association hopes that other German societies also will join in this protest, and that the Germans of New York will teach the gentleman in question (meaning the plaintiff and producer of the play 'Zabern')

a lesson by not visiting the theater (meaning the theater conducted by this plaintiff).

"The German press of New York is most courteously requested to take notice of this resolution and to publish the same in its columns."

The sixth article is alleged to have been published in the New Yorker Staats-Zeitung on the 7th day of February, 1914, and is the same as the fifth, excepting that the last paragraph was not repeated therein.

The seventh article is alleged to have been published in the New Yorker Staats-Zeitung on the 17th day of February, 1914, and the English translation, with innuendoes, is as follows:

### "Against 'Zabern.'

"The German National Merchants also protest against the performance of the play (meaning plaintiff's production of the play 'Zabern').

"Also the local group of the 'Deutschnationaler Handlungs-Gehilfen Verband' (German National Commercial Clerks' Association, Headquarters, Hamburg), District North America, which, with its 150,000 members, the largest mercantile society, which maintains 10 local groups in the Union, Canada, and Mexico, and is spread over the entire world with a total of 1,400 local groups, takes a position against the production of the bungling piece 'Zabern' (meaning the said play 'Zabern') in the Adolf Philipp Theater here (meaning the plaintiff's said theater). The writing of the society to the manager of the theater (meaning the plaintiff) reads:

" 'To the management of the Adolf Philipp Theater, 57th St. and 3d Ave., New York:

" 'True to our German National principles and in the spirit of the aims of our largest mercantile association, numbering 150,000 members, we hereby also protest against the production of that miserable, bungling piece of work 'Zabern' (meaning the play 'Zabern' produced by the plaintiff). Although we do not expect a practical success, as the management (meaning the plaintiff) apparently cares more for a box office success than for the reputation of German stage art in a foreign country, we regret nevertheless that this practice should be made use of to injure the esteem, honor, and reputation of the Germans. Our pity is for the German actors (meaning the actors in the employ of the plaintiff connected with the performance of 'Zabern'), who, perhaps, 'obeying compulsion not their own liking,' must offer nightly that spurious (or basest) art (meaning the performance of 'Zabern') to a sensation-seeking audience (meaning and intending to injure the plaintiff in its business and destroy the value of its property, by inciting and provoking the German public to hatred of and prejudice against the plaintiff and its business and property, by charging and asserting that the production of 'Zabern' in the plaintiff's theater is not only inartistic and deserving of no practical success, but that said production was made use of by the plaintiff to injure the Germans in their esteem, honor, and reputation). A manager would never dare to bring before an Irish, French, or Jewish audience a vilification of its country or of its national characteristics, such as is offered to the German element in New York in 'Zabern' (meaning the plaintiff's production).

" 'Calling herewith also upon the other mercantile associations to join in our protest (meaning in the protest against the plaintiff's production of 'Zabern'), we would like, at the same time, to express our recognition to the management of the Irving Place Theater (meaning the competitors of the plaintiff in New York) for its earnest endeavors to again bring esteem and honor to the German stage in New York (meaning and intending thereby to urge the public generally to condemn the plaintiff's theater and to urge the German theater goers to prefer the plaintiff's competitors for alleged efforts to restore the honor of the Germans, which, it alleges, the plaintiff has offended).' "

The eighth article is alleged to have been published in the Abendblatt der New Yorker Staats-Zeitung on the 17th of February, 1914, and is precisely the same as the seventh.

The ninth article is alleged to have been published in the Sonntagsblatt der New Yorker Staats-Zeitung on the 22d day of February, 1914, and the English translation, with the innuendoes, is as follows:

"Later in the course of the evening (referring to an alleged meeting held by a certain German society) a resolution of protest in the form of an open letter against the production in the Adolf Philipp Theater (meaning the plaintiff's theater) of the scandalous play 'Zabern,' which vilifies German patriotism, was passed by the meeting."

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

John E. Donnelly, of New York City (Alfred J. Amend, of New York City, on the brief), for appellant.

Rudolph Marks, of New York City, for respondent.

LAUGHLIN, J. All facts alleged, which are material to a discussion of the appeal, are stated in the statement of facts.

[1, 2] The first point to be decided is whether there is a sufficient allegation of special damages, for, if so, all counts of the complaint are good, and the demurrer was properly overruled. There is no allegation with respect to the amount that plaintiff was offered for the English rights for the production of the play, or with respect to the damages sustained by the withdrawal thereof. There is no allegation that any particular patron or patrons of the theater, who otherwise would have attended, remained away on account of the publication; nor is there any allegation of any particular loss of box receipts on account of any of the publications. The allegations with respect to the withdrawal of the offer for the English rights, and instigating a boycott against the plaintiff's theater, are the only ones which it is or could be claimed constitute allegations of special damage. The general rule applicable to actions for libel and slander is that, if special damages are claimed, they must be expressly alleged, and with such particularity as to enable defendant to meet the charge, and in this respect such actions are unlike those in which the defendant's remedy is for a bill of particulars, if the damages are not alleged with sufficient definiteness. Reporters' Association v. Sun Printing & Pub. Ass'n, 186 N. Y. 437, 79 N. E. 710. I am therefore of opinion that such special damages are not alleged, and that the sufficiency of each cause of action depends upon whether the article therein quoted was published of and concerning the plaintiff and was libelous per se with respect to the plaintiff.

[3] It is to be borne in mind that the articles were all published in German. They are alleged in the complaint as published in the German language, and this is followed by the English translation thereof, with the innuendoes in parentheses. Each of the articles relates to the production of this play at the plaintiff's theater; but neither the corporate name of the plaintiff nor of the theater is given, and it is charged that the production was given by Adolf Philipp at the Philipp Theater, or the Fifty-Seventh Street Theater. The plaintiff claims that each of the articles libeled it in its business. The defendant claims that it is not shown, and cannot be made to appear by innuendo,

that the articles were in any respect published of or concerning the plaintiff, for the reason that they relate principally to the authorship of the play and to Philipp individually as an actor, playwright, and theatrical manager. I am of opinion that there is no force in this contention. We are not now concerned with those parts of the articles relating to Philipp individually, or with the motive of the author of the play; but in so far as they reflect upon the management of the theater, and the character of the play it was producing, and the motive underlying its production by the plaintiff, they are sufficiently shown to have been published of and concerning the plaintiff by the mere allegation that the plaintiff is the lessee of the theater and producing the play thereat, and no innuendo was necessary, and, being superfluous, they are harmless. Soper v. Associated Press, 115 App. Div. 815, 101 N. Y. Supp. 342, affirmed 188 N. Y. 550, 80 N. E. 1120; Nunnally v. New York, etc., 111 App. Div. 482, 97 N. Y. Supp. 911; Weston v. Commercial Adv. Association, 184 N. Y. 479, 77 N. E. 660. See, also, Parker v. Bennett, 68 App. Div. 148, 74 N. Y. Supp. 214.

[4-6] If the articles merely constitute a libel or slander on the theater or the play, as distinguished from the plaintiff and its business, and the nature and management thereof, then they would fall within the rule that an action for libeling a "place or thing" will not lie without allegation and proof of special damages. See Marlin Firearms Co. v. Shields, 171 N. Y. 384–390, 64 N. E. 163, 59 L. R. A. 310; Maglio v. New York Herald Co., 83 App. Div. 44, 82 N. Y. Supp. 509, and 93 App. Div. 546, 87 N. Y. Supp. 927; Kennedy v. Press Pub. Co., 41 Hun, 422; Le Massena v. Storm, 62 App. Div. 150, 70 N. Y. Supp. 882; Bosi v. N. Y. Herald Co., 33 Misc. Rep. 622, 68 N. Y. Supp. 898, affirmed 58 App. Div. 619, 68 N. Y. Supp. 1134; Felt v. Germania Ins. Co., 149 App. Div. 14, 133 N. Y. Supp. 519. I am of opinion that the articles relate to the theatrical business conducted by the plaintiff, and to the plaintiff's production of the play "Zabern," and therefore they relate to the plaintiff's business. It is now well settled that an article may be libelous per se against a corporation. There is, however, a marked difference between an action by an individual for libel and one by a corporation, inasmuch as the basis of an action by an individual is usually the injury to his moral character and reputation, whereas, those elements are necessarily eliminated in an action by a corporation, which can only be damaged by an attack upon its business methods of a nature calculated and tending to injuriously affect it pecuniarily in its business reputation and credit; but when it may fairly be inferred from a malicious and false publication that it will injuriously affect the corporation in its business and credit, then the article is libelous per se and damages are presumed. Reporters' Ass'n v. Sun Printing & Pub. Co., 186 N. Y. 437, 79 N. E. 710; Arrow Steamship Co. v. Bennett, 73 Hun, 81, 25 N. Y. Supp. 1029; Town Topics Pub. Co. v. Collier, 114 App. Div. 191, 99 N. Y. Supp. 575; Kemble & Mills Co. v. Kaighn, 131 App. Div. 63, 115 N. Y. Supp. 809; Mut. Reserve Life Ass'n v. Spectator, 50 N. Y. Super. Ct. 460; Union Associated Press v. Heath, 49 App. Div. 247, 63 N. Y. Supp. 96; New York Bureau of Information v. Ridgway-Thayer Co.,

dissenting opinion of Ingraham, J., 119 App. Div. 339, 104 N. Y. Supp. 202, on which the judgment was reversed, 193 N. Y. 666, 87 N. E. 1124. See, also, Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 810, and Davey v. Davey, 22 Misc. Rep. 668, 50 N. Y. Supp. 161.

[7] The demurrer admits the facts alleged, including the application of the words published as charged in the innuendoes, in so far as they are susceptible of the meaning ascribed to them by the innuendoes; but an innuendo can neither extend nor enlarge the publication, and where the article is not libelous on its face with appropriate innuendoes showing its application, and becomes so only by reference to extrinsic facts, such facts must be alleged in traversable form, for they relate to the substance and not to the application of the charge, and if the article be libelous per se, or may be on the facts as found by the jury, it is immaterial whether or not it is susceptible of another meaning ascribed in the innuendo. Van Heusen v. Argenteau, 194 N. Y. 309, 87 N. E. 437; Parker v. Bennett, supra; Morrison v. Smith, 177 N. Y. 366, 69 N. E. 725; Fleischmann v. Bennett, 87 N. Y. 231; Hoey v. N. Y. Times Co., 138 App. Div. 149, 122 N. Y. Supp. 978.

[8] The press is accorded, for the public interests, a qualified privilege to discuss and criticize the management of and productions at a theater to which the public are invited, and this privilege, in the absence of actual malice, extends even to ridicule and is without limitation; but since it is accorded for the benefit of the public only, and the guidance of public opinion and taste, when the discussion or criticism exceeds the bounds of fair and honest criticism, and becomes an intemperate, aspersive attack upon the motive of the management of the theater, or the character of the production thereat, an evil and malicious motive for the publication may be inferred, and, if found to exist, the publication is not protected by the qualified privilege, but may, of course, be justified by absence of malice, or by pleading and proving that it was true. Triggs v. Sun Printing & Pub. Co., 179 N. Y. 144, 71 N. E. 739, 66 L. R. A. 612, 103 Am. St. Rep. 841, 1 Ann. Cas. 326; Hamilton v. Eno, 81 N. Y. 116; Hoey v. N. Y. Times Co., supra. See, also, Klinck v. Colby, 46 N. Y. 427, 7 Am. Rep. 360; Ashcroft v. Hammond, 197 N. Y. 488, 90 N. E. 1117; Laughton v. Bishops of Sodor and Man (1871–1873) L. R. 4 P. C. 495–505.

It only remains to apply these general principles to the alleged libelous articles, and to decide whether, in the light thereof, they are libelous per se. I do not deem it necessary, and it would unduly lengthen this opinion, to separately analyze and discuss the different articles. It is evident to me, on reading them in the light of these rules of law, that some of them do not exceed the bounds of fair and honest criticism, and do not necessarily tend to injure the plaintiff in its business and credit, and although the line of demarcation is not so well defined that the task is easy, I am of opinion that the alleged libelous articles set forth in the first, second, and ninth counts fall in this category. On the other hand, it is quite clear that the articles which are the bases of the other causes of action alleged are not pro-

tected by the qualified privilege, for they are not confined to criticism of the play, and to informing the public with respect to the nature thereof, or of defendant's views concerning it, but constitute aspersive attacks in violent and intemperate language upon the plaintiff's business, and upon its motive in producing the play by what are conceded by the demurrer to be false charges with respect to the character of the play, that are calculated and expressly stated to be intended to induce the German-speaking public to refrain from patronizing the theater, and thereby to inflict damages upon the plaintiff.

It follows, therefore, that the order, in so far as it overrules the demurrer to the first, second, and ninth causes of action, should be reversed, with $10 costs and disbursements, and in all other respects affirmed, without costs, but with leave to defendant to withdraw its demurrer to the other causes of action and to answer.

INGRAHAM, P. J., and HOTCHKISS, J., concur.

DOWLING, J. (dissenting). Where the proprietor of a theater, for the sake of profit, deliberately places upon the stage a production which is bound to arouse controversy by the nature of its subject, or the manner of its treatment, and particularly where he offers for popular patronage a play which is offensive to the racial or religious sentiments of such public, or any considerable portion thereof, he must accept not only criticism of his offering but of his motives in voluntarily challenging the open hostility of the community at large, or of such section of it as he has chosen to attack. Instances are not wanting where such attack has been deliberately made, with the hope of consequent profit from the section of the community holding different views from the one attacked. In so far as the articles complained of referred to the business conducted by the plaintiff, they were criticisms directed against an enterprise which, while posing as a German theater, and appealing for support solely to the German element in this city, for reasons of its own chose to present a play which was repugnant to the ideas of Germans who still entertained an affection for the country of their birth. The feeling of hostility which might reasonably be supposed to be aroused by such a course of conduct was aggravated by the presentation of this play, having to do with the German military system, at a time when Germany's relations with at least one other nation referred to were strained. For the proprietors of a German theater to present a play involving issues vital to Germany and lying at the very root of the controversial issues then being vigorously debated, it seems to me was an open invitation to a discussion by Germans of its methods and motives, which was bound to be severe, and perhaps could not escape being abusive. So far as the English translation of these articles discloses, they contain such criticism as might be expected to be called for in response to the plaintiff's production of the play; and, having in view all the conditions under which the play was produced and the articles published, I do not think that they are libelous, or that they go further than might naturally be expected under such circumstances.

There being no appropriate allegation of special damage, and the articles in my opinion not being libelous per se, I believe the demurrers to all the causes of action should have been sustained.

SCOTT, J., concurs.