INDUSTRIAL EXPORT & IMPORT CORPORATION, Plaintiff, *v*. HONGKONG & SHANGHAI BANKING CORPORATION, Defendant.

Supreme Court, Trial Term, New York County, December 22, 1947.

*Joseph Lew* for plaintiff.

*George W. Kilgus* for defendant.

STEUER, J.   Defendant is a banking corporation with branches in Shanghai, China, and in New York.   Plaintiff is a domestic corporation, but at the times in question all of its officers and its sole stockholder were residents of and carried on the business of the corporation in Shanghai.   That business was the importation of leather into China for the manufacture of shoes.

In October of 1941, plaintiff, desiring to import some leather, sought the necessary exchange, namely, United States dollars. At that time there existed in China an agency of the Chinese Government called the Stabilization Board.   The statute, or other means by which this board was promulgated and its powers defined, was not produced at the trial and there was testimony that the Japanese invasion left official and consular archives in such condition that an intensive search was unproductive.   The forms and usages of the board and the testimony of one of its members will have to supply the deficiency caused by its absence.

On October 15, 1941, plaintiff made an application in writing addressed to defendant for the purchase of $14,000 in United States currency.   The application stated that the merchandise to be imported was to be paid for through a letter of credit to be issued by defendant.   It was submitted to the Stabilization Board and approved to the extent of $7,000 on November 19, 1941.   On December 3d plaintiff gave its check to defendant for 132,544.38 Chinese dollars and the next day defendant's New York branch issued a letter of credit to the shippers of the merchandise.   In the bank the procedure was that a suspense account on the letter of credit was opened and credited with the amount of the check.   The bank had previously paid to the Stabilization Board 130,894.38 Chinese dollars to take up the $7,000 (United States).   The difference between the amount paid by plaintiff and the amount paid the Stabilization Board was a commission allowed by the Stabilization Board to the authorized banks and resulted from a difference in the rate of exchange they were allowed to charge their customers and the rate they were required to pay the Stabilization Board.   In addition, specie Chinese dollar notes to the full amount of the check were

deposited in the vaults of the bank, but to whose credit or for what purpose does not appear. When the cable advice was received from the New York office that $7,000 had been received, the Shanghai branch debited the New York branch $7,000 and credited the Stabilization Board account with the same sum.

Four days after the arrangements outlined above came the attack on Pearl Harbor. Communication between Shanghai and the Occident was cut off. Defendant's Shanghai branch was taken over by the Japanese and the individuals interested in the plaintiff corporation were interned. The shipper of the merchandise did not make shipment and the letter of credit expired. So things remained until August, 1945, when the Japanese left Shanghai. In due course plaintiff made demands on defendant. In the meantime the Stabilization Board had been abolished and the Central Bank of China was appointed to liquidate its affairs including such transactions as were pending and interrupted by the outbreak of hostilities. This bank has notified defendant not to disburse any sums on deposit with it pursuant to Stabilization Board affairs until further investigation. Apparently it is still investigating. Plaintiff sues for the $7,000.

There are two preliminary questions which, though preliminary, are of great weight: Has plaintiff sued the right party, and if so, what law governs their transactions and relationship?

It is defendant's contention that throughout this transaction it acted as agent for the Stabilization Board. It further claims that it did not receive the funds here in New York on behalf of the plaintiff but only for the limited purpose of seeing they were disbursed in conformity to the board's directions. Presumably the statute creating the board would give a definitive answer to these questions. However, the instructions given by the board to banks operating in China and the forms adopted by the board throw some light on the subject. There appears to be no requirement that a bank must submit any application made by an importer. The instructions specifically place on the bank the onus of satisfying themselves that the application is for the purpose of legitimate import and that the importer has not obtained exchange from any other source. The form by which the bank transmitted the importer's application was headed "Application to the Stabilisation Board of China for the purchase of foreign exchange by an authorised or a licensed bank on behalf of its clients for import requirements." In the application the bank was required to certify that it had not obtained foreign exchange in regard to the imports in question from

any other source and .it would resell to the board any part of the exchange which was not actually used in the transaction. The instructions further provided that in the event that a bank had available exchange it should note this in its application and that its application (as distinct from the importer's) should only be for the balance which it lacked.

From these facts it is concluded that the relationship of the parties in this transaction was that of principals. Plaintiff bought from defendant and defendant from the board. In both sales there were restrictions. The way that defendant treated the transaction on its books was merely the manner in which it deemed it could best enforce the restrictions which the sale involved.

Defendant's second contention is that plaintiff's rights are governed by the law of China. Assuming this to be correct, defendant asserts that there is no proof of the general laws of China, and China, not being a country where the common law prevails, the court cannot make assumption of similarity to our law. Generally speaking there is some merit in this contention (*Crashley* v. *Press Publishing Co.*, 179 N. Y. 27). But where, as here, it appears that commercial transactions are frequent, that commerce is general, and that comparable business is carried on, the court may assume that general principles essential to the effectual regulation of the same prevail. In the cited case it was held that it would not be assumed that in a foreign country a certain state of facts would constitute a crime but the court could assume that certain heinous acts were crimes in any civilized land. It is a safe assumption that in any place where business is general, one who receives money for a specified purpose is required to make restitution if the purpose fails. This of course would be in the absence of special circumstances. Here there are two special circumstances. The first is that while it has been concluded that under our law the defendant was an independent actor in the transaction, it does not follow that in China it would be so decided. In addition, there is the ban placed on repayment by the Central Bank of China and there is no showing that this was in contravention of any Chinese statute or regulation. On the contrary, it would be reasonable to assume the opposite. In any event if Chinese law governs, the burden would be the plaintiff's to show that its rights were established under that law.

This brings us to a consideration of the governing law. While an action for the breach of a contract or to compel its

performance is governed by the law of the place of performance, this is not such an action. There was no breach and the plaintiff is not seeking specific performance. It is seeking restitution of the consideration it paid because the contract became impossible to perform. This is an action in quasi contract. Such an action is governed by the law of the place where the cause of action arose (*Balee* v. *Hidalgo County Water Imp. District No. 4*, 229 App. Div. 660). The cause of action arose where the money was paid and its return demanded. This place was Shanghai. It follows that the law of China governs and that plaintiff has not established a case.

Judgment for defendant.