**GONZALEZ v. HEARST CONSOLI-
DATED PUBLICATIONS, Inc.**

United States District Court
S. D. New York.
Oct. 30, 1953.

Leighton & Steger, New York City, Murray Biller, Brooklyn, of counsel, for plaintiff.

McCauley & Henry, New York City, Charles Henry and Harvey L. Lipton, New York City, of counsel, for defendant.

WEINFELD, District Judge.

In this action for libel the defendant moves pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, 28 U. S.C.A., to dismiss the amended complaint for failure to state a claim. Federal jurisdiction rests on diversity of citizenship. Plaintiff is a national of Mexico and a resident of Los Angeles, California, where he is engaged in the business of importing and exporting food commodities.

The alleged libel is a lengthy news article which was published in the defendant's newspaper, The New York Journal-American, on April 25, 1952. The article deals with the purchase on that day by the plaintiff from the Commodity Credit Corporation of 36,000,000 pounds of red kidney beans, for which he paid $900,000. The complaint sets forth the article in haec verba. The gist of the article is to the following effect:

that this lot of red kidney beans had been in storage since 1948, when the Commodity Credit Corporation bought it; that it had been sold to the plaintiff; that although both the United States Pure Food and Drug Administration and the New York Health Department inspectors had pronounced the beans "unfit for human consumption" they had been cleared for export to Mexico, where the plaintiff said they will be sold to the Mexican peons for food; that Williams, the chief inspector of the Pure Food and Drug Administration, who the previous month had asked the Health Department to embargo a shipment of the same surplus red kidney beans because of weevils and mold, said he was without jurisdiction over the present shipment since he can ask for an embargo only if the beans were to go into interstate commerce or failed to meet the standards of foreign countries (presumably those to which they were being shipped); that Williams said he had checked with the highest authority in the Agriculture Department in Washington and had received assurance that the condition of the beans was not in violation of the laws of Mexico. The article further states that a spokesman for the Commodity Credit Corporation said the beans would be reprocessed in Mexico to remove mold and kill any weevils before they were sold for human consumption; that while the reprocessing might restore the high gleam of the beans, it was doubtful whether it would increase their nutritional value, if any, for agriculture experts say such beans dry up rapidly in storage and their nutritional value becomes nil after eighteen months. There is also reference to the government's loss on the lot and other background material to give the article flavor and reader appeal.

The amended complaint alleges that the article is false and defamatory; that defendant knew, or, in the exercise of reasonable care, could have ascertained that the said article was untrue; that plaintiff's credit and reputation was injured by its publication and it caused him to lose sales of red kidney beans in Mexico and South America, which he could have made but for its publication.

In my opinion, the article, standing alone, is not actionable per se. It does not hold the plaintiff up to public ridicule, obloquy, scorn or reflect on his business reputation. It does not charge him with undertaking to sell the beans in violation of the laws of Mexico. On the contrary, in effect, the article states that he proposed, after the beans were reprocessed, in order to kill weevils and to remove mold, to sell them in Mexico, where the condition of the beans met required standards, notwithstanding they had previously been pronounced as "unfit for human consumption" here by the United States Pure Food and Drug Administration and the New York Health Department, presumably because they failed to meet applicable statutes and regulations. This is emphasized by the reference in the article to the chief inspector's statement that the Department of Agriculture "had received assurance that the condition of the beans is not in violation of the laws of Mexico" and that the Department lacked power to embargo the beans for export purposes since "they meet Mexico's standards."

The criteria for determining the fitness of food intended for human consumption may, and do, vary from country to country and from community to community, and there is no presumption that the laws of Mexico are similar to our laws with respect to minimum standards for food products.[1] Thus, there is no showing that the plaintiff was engaged in, or intended to engage in, any illegitimate activity, or that his alleged purpose to sell the beans in Mexico, notwithstanding prior rejection of them here, offended its laws.

If the plaintiff would read into the article something derogatory to

1. Crashley v. Press Publishing Co., 179 N.Y. 27, 32, 71 N.E. 258.

his reputation he should have pleaded an appropriate innuendo.[2]  Or if its defamatory character rests on extrinsic facts, these should be alleged, and in such case special pecuniary damages alone may be recovered.[3]  No extrinsic facts are found in the amended complaint here challenged.

■■ Moreover, since the article is not libelous per se, the amended complaint is subject to the further objection that it fails to allege special pecuniary damage.  The mere general statement of loss of sales is not a compliance with the established rule that when special damage is pleaded in a libel complaint it must be set out with particularity.[4]

The motion to dismiss is accordingly granted with leave to plaintiff to serve a further amended complaint.

Settle order on notice.

2.  Crashley v. Press Publishing Co., 179 N.Y. 27, 71 N.E. 258; Yonkers Railroad Company v. Herald Statesman, Inc., 248 App.Div. 633, 288 N.Y.S. 286, affirmed 273 N.Y. 541, 7 N.E.2d 683.

3.  O'Connell v. Press Publishing Co., 214 N.Y. 352, 108 N.E. 556.

4.  Reporters' Ass'n v. Sun Printing & Publishing Ass'n, 186 N.Y. 437, 442, 79 N.E. 710; Adolf Philipp Co. v. New Yorker Staats-Zeitung, 165 App.Div. 377, 390, 150 N.Y.S. 1044, 1052.