LYNNE FORAY, Plaintiff, *v.* HEARST CORPORATION, Defendant.

Supreme Court, Special Term, Queens County, June 13, 1949.

*McCauley & Henry* for defendant.

*Patrick F. Dempsey* for plaintiff.

CUFF, J. This is a motion by defendant to dismiss the amended complaint in this libel action because it fails to state a cause of action.

Defendant, publisher of the *New York Mirror,* a widely read newspaper of New York City, carried a two column picture of plaintiff and a young man captioned " Mississippi's Air Hero with his Bride ". Beneath the picture were these words: " Lt. Van Thomas Barfoot, Congressional Medal winner, was married yesterday to Norma Louise Davis in Mathews Baptist Church, Hudgins, Va. Mrs. Barfoot, former schoolteacher, is the daughter of Capt. and Mrs. James Davis, Halliford, Va."

In her complaint, plaintiff alleges that she resides with her parents, is twenty-three years old, unmarried, of high moral character, unblemished reputation, by profession a model of junior misses clothes in the employ, at a substantial salary, of a " high class Fifth Avenue department store in the City of New York "; that she expended time and money training for her work; that her services have been in great demand; that in her profession, her service " depends on the good opinion which the public and her employer hears of her personal life and habits "; that in her profession her personal life must be free from scandal or the suggestion of " a clandestine marital life " at the cost of unemployment; that by reason of the publication of the alleged libel, her reputation has been damaged by the public interpretation of the article to the effect that she has been " clandestinely living with her husband "; that she has lost " the esteem and respect " of her profession as well as being subjected to " public scorn, ridicule and contempt " as a result of which her services as a model have been irreparably " substantially curtailed if not completely ended ". The allegations of the above part of the

complaint are general and seem to apply to every part of the publication.

The complaint specifically denies the truthfulness of the published article, alleging that plaintiff never married Lieutenant Barfoot; that she was never known as " Norma Louise Davis " the name ascribed to her beneath the picture; that she is a Roman Catholic, abides by the tenets of her faith and has not renounced her attachment thereto in favor of the Baptist religion in a church of which denomination the article stated the marriage took place; that defendant's published article was maliciously contrived, intended to injure plaintiff and prevent her from earning a livelihood; that it caused her to be suspected of having married and having lived with Barfoot as man and wife.

Plaintiff pleads no special damages but demands general damages.

What happened is this: Defendant had in its files a photograph of plaintiff and Lieutenant Barfoot, taken at a date prior to the publication, wherein they had posed together. When the news arrived that Barfoot had married Miss Norma Louise Davis, defendant's staff assumed erroneously that the girl in the filed photograph was Miss Davis and published the picture, identifying plaintiff's picture therein as that of Miss Davis in the legend.

In its brief, defendant admits the error. Error is no defense to a libel suit (*Peck* v. *Tribune Co.,* 214 U. S. 185, 189; *Corrigan* v. *Bobbs-Merrill Co.* 228 N. Y. 58, 63). Moreover, we are not concerned here with any form of defense. The inquiry is: Does the complaint state a cause of action? All proper allegations of the complaint on a motion of this kind, must be deemed proved. Do the words and picture published concerning the plaintiff libel her?

Seelman, in " The Law of Libel and Slander in the State of New York " at page 8, paragraph 18, provides the following very comprehensive definition of libel: " Libel is an accusation in writing or printing or by sign, mark, movie reel, picture or effigy, against the character of a person  *  *  * which affects his reputation, in that it tends to hold him up to ridicule, contempt, shame, disgrace or obloquy, to degrade him in the estimation of the community, to induce an evil opinion of him in the minds of right thinking persons, to make him an object of reproach, to diminish his respectability or abridge his comforts, to change his position in society for the worse, to dishonor or

discredit him in the estimation of the public, or his friends and acquaintances, or to deprive him of friendly intercourse in society, or cause him to be shunned or avoided ''.

Analyzing the article complained of, we find that it states (1) that plaintiff married, (2) that she married Lieutenant Barfoot, (3) that her name is Norma Louise Davis, (4) that she was married in the Mathews Baptist Church, (5) that she had been a school teacher, and (6) that her parents are Captain and Mrs. James Davis of Halliford, Virginia. It is, of course, conceded that none of those five statements is true. It should be noted that it is not the complaint of plaintiff that she has been linked by the article to undesirable people. On the contrary, considering the principle of the law of libel to the effect that the whole publication must be read (*More* v. *Bennett,* 48 N. Y. 472) it would appear that Lieutenant Barfoot is a highly estimable person and more — a recognized national hero.

No extrinsic facts are pleaded to provide by innuendo how identifying plaintiff as '' Norma Louise Davis '' or stating that Captain and Mrs. Davis are plaintiff's parents defamed her. The article's reference, therefore, to those names and people do not libel plaintiff.

Teaching school is and has always been a high class, necessary and time-honored vocation. In the absence of innuendo, erroneously characterizing a young woman as a '' former school teacher '' is not within the pale of a libelous charge.

Stripped of these obviously innocent words and expressions, the complaint, in its most favorable light, seems to charge that the article falsely states (a) that plaintiff is a married woman and (b) that she married in a Baptist church. In (a), plaintiff, by innuendo, seeks to torture the words '' was married '' which appear in the article, into meaning that the marriage occurred long prior to the publication and that there was a '' clandestine living with her husband '' period before the ceremony. She evidently considers (b) libelous per se for no innuendo is pleaded except she alleges that being a Roman Catholic, marriage in another church would appear to be tantamount to forsaking her faith and her friends, etc., so understood it.

The office of innuendo is employed whenever words are not clear. It may not be used to enlarge the natural and ordinary meaning of words. Innuendo may not place a construction on words which the passage wherein they are contained will not bear, nor can the sense of the words be extended and altered to strain them into a charge of libel per se when their natural

meaning and construction are foreign to that idea. (Odgers on Libel and Slander [5th ed.], p. 116.) The article states that plaintiff " was married yesterday ". There is not the slightest suggestion in that clause which supports plaintiff's interpretation of immorality.

The charge is, therefore, reduced to the false statement that plaintiff " married ". Plaintiff was eligible to marry and legally qualified. She pleads no extrinsic facts which would define her marriage as being regarded by those who know her as unusual, unbecoming or in bad taste in the sense that embarrassment would be visited upon her thereby, much less " ridicule, contempt, shame, disgrace or obloquy to degrade her in the estimation of the community, to induce an evil opinion of her in the minds of right thinking persons ", one of which characterizations is necessary to sustain that kind of libel per se.

To say erroneously of a man that he has died is not libelous per se (*Cohen* v. *New York Times Co.,* 153 App. Div. 242). No case treating with the false charge of being " married " has been cited. How could such an utterance be libelous per se? Marriage is an honorable, wholesome and necessary institution, recognized as such by States, governments and peoples throughout the world. Our laws favor marriage and discourage interference therewith, our courts even holding that agreements generally restricting such unions are contrary to public policy and void. (*Matter of Burnside,* 176 Misc. 562.) Dignified, as the news report complained of indicates, by the various religions providing an inspiring and holy ritual for the ceremonies; recognized by the public as a very happy event, culminating after careful and long preparation, worthy of great celebration and even publicity, moving relatives and friends to shower upon the principals gifts and words of encouragement looking toward a successful union, marriage and its *pro genital sequella* must be accorded highest honors in our way of life before which all other accomplishments of man and woman seem to shrink to invisibility in importance. Did it not inspire the poet, Ralph Waldo Emerson, to write " all mankind loves a lover "? Whatever is said against the state of matrimony by responsible folks is not derogatory of marriage as an institution but the remarks are directed against the parties to particular marriages and usually relate regretfully to their failures in preserving the desirable state which they had assumed. Considering what marriage is and all it means to the public, to the individuals and to the State, no court of justice may sustain a complaint

even to the limited extent of permitting a trial wherein the charge amounts to nothing more than a naked false report in writing that a qualified young lady was married when in truth she was not. The farfetched illogical, unjustified innuendo set forth in this complaint completely fails to bolster up the charge which plaintiff has projected.

To describe one as married connotes the assuming of a relationship thoroughly and enthusiastically (if that ever can be the case wherein a state is involved), indorsed by all governments within our nation and nearly all in the other parts of the civilized world. To say a qualified person is married is not unlike describing one as " patriotic ", yet who would deign to base a libel upon that description of herself? That part of plaintiff's complaint falls with an unmistakable thud.

There remains the charge that plaintiff was married in a Baptist church whereas she is a Roman Catholic. No extrinsic facts are alleged in that respect except that plaintiff alleges that she abides faithfully by the tenets of her religious belief and that to be married outside of the Church would be a transgression by her. In order to erect from that admitted incorrect report a basis for a libel suit, it would have to appear in the complaint, that plaintiff's alleged marriage under the auspices of the Baptist religion subjected her to ridicule, shame, disgrace, contempt or obloquy. Surely the statement standing alone could not convey any such meaning. The Baptist religion is one of the outstanding religions in our country and bears, like the nation's other religions, an excellent reputation and, like them also, embraces within its membership some of the nation's greatest, best and leading citizens and clergymen. Plaintiff pleads no special facts about herself which explain in what way that particular part of the article libeled her.

There is no libelous matter contained in the published words complained of by plaintiff. *Spector* v. *News Syndicate Co.* (280 N. Y. 346), upon which plaintiff relies, helps plaintiff not at all. In that case, defendant made an error in its publication as happened in the case at bar. But the difference is that at bar, the words are not libelous, whereas in the *Spector* case (*supra*) the words were libelous.

Motion granted.