Frederick Backer, J.
Defendants the Hearst Corporation — New York Mirror Division, Glenn Neville, Charles B. McCabe and Frank Quinn move to dismiss the complaint under rule 106 of the Buies of Civil Practice, for legal insufficiency, on the face thereof. These defendants contend that the complaint fails to allege what special damage, if any, plaintiff has suffered, and, that the allegations of such special damage are essential whenever one claims recovery for a publication which, to a general reader (and to a well-motivated publisher), is not discernibly defamatory on its face.
Plaintiff has sued these defendants, as well as others named in the summons and complaint herein, for libel. The alleged libelous publication is reported in the New York Mirror as follows:
“ Didn’t you have a double? ” we asked.
“ Sure, but she couldn’t swim. It seems they forgot to ask her. So, I jumped in and did the scene. It’s probably better because, they could shoot close-ups, whereas with the double it would have had to be long shots.”
*1075 The complaint sets forth the alleged libel as follows:
Q. “ Didn’t you have a double? ” A. “ Sure, but she (meaning this plaintiff) couldn’t swim. It seems they forgot to ask her (meaning this plaintiff), so I jumped in and did the scene. It’s probably better because they could shoot close-ups whereas with the double (meaning this plaintiff) it would have had to be long shots. ’ ’
The complaint further alleges much extrinsic material in which she alleges that she was the only “ double ” for Miss Wood employed during filming of that particular sequence (par. 17); that she is reputed to be an 11 expert swimmer ”, among other things (par. 15); that she was hired by the producer to swim for Miss Wood (par. 16); and that she in fact performed that swimming sequence for Miss Wood (par. 16). The publication, giving it the meaning that the ordinary reader would draw from it, is not libelous per se. It is not defamatory on its face to say that a “ double ” cannot swim. No person, no film star, and no film star’s “ double ” can be, or is expected to be, accomplished in every field of human activity. A “ double ” is defined as “ a player or singer who prepares to take the part of another player in his absence; a substitute; understudy” (Webster’s New International Dictionary, [2d ed., Unabridged]). For all that appears from the article itself, plaintiff might be well qualified as a “ double ” for Natalie Wood by reason of other qualities without regard to her talent as a swimmer. Thus, to say that plaintiff lacks the ability to swim (if the article is construed so) takes nothing from her value as a “ double ” unless there are facts extrinsic to the publication which peculiarly make it a libel to say that this particular “ double ” cannot swim. Plaintiff would thus have the court reach out beyond the very words of the publication and construe it as a charge that she is fraudulent and deceptive in that she could not perform the feat she was hired to perform (par. 33). Thus we find plaintiff’s allegations that she is an “ expert swimmer ” by vocation and was hired to swim for Miss Wood. But these facts are extraneous to the publication and are unavailable for such purpose. A plaintiff cannot use innuendo to explain an innocent statement and thereby seek to make it libelous per se (Fleischmann v. Bennett, 87 N. Y. 231; O’Connell v. Press Pub. Co., 214 N. Y. 352). The function of the innuendo is to explain, not to expand the publication, and plaintiff cannot enlarge or change the language used by innuendo. Words which are not libelous in themselves cannot be made so by innuendo (Hays v. American Defense Soc., 252 N. Y. 266, 269; Waldron v. Time, Inc., 83 N. Y. S. 2d 826; Foray v. *1076 Hearst Corp., 196 Misc. 57; Feinstein v. Kaye, 185 Misc. 185, affd. 269 App. Div. 1044, motion for leave to app. den., 270 App. Div. 765). Does the innuendo here meet the test so laid down? Plaintiff would have the publication construed that shev,was not a swimmer but a fraud in that respect. But that is not the purport of the actual words “ Sure, but she couldn’t swim ”. She could still be a swimmer but at that particular time she might not have been able to swim for many other reasons. Why accept plaintiff’s tortured construction that the words purported her to be a fraud, incapable and incompetent in her profession (par. 25). The article moreover does not charge plaintiff with deficiencies in other areas of conduct or ability for proper performance of her duties as a“ double ”. The article here spoke of plaintiff as a “ double ”, not as an “ expert swimmer ” or “ stunt player ”. The article is not libelous per se because it does not speak of this plaintiff in her specialized vocation of “ expert swimmer ”. In Moore v. Francis (121 N. Y. 199, 206) the Court of Appeals stated that “ Words to be actionable on the ground that they affect a man in his trade or occupation, must, as is said, touch him in such trade or occupation; that is, they must be shown, directly or by inference, to have been spoken of him in relation thereto and to be such as would tend to prejudice him therein.”
In summary, therefore, the article in and of itself does not, on its face, defame plaintiff as Miss Wood’s “ double ”. It is only the complaint which alleges that plaintiff is a professional movie stunt player; that she was hired to swim a particularly dangerous scene; that she did swim it competently at great risk to her own safety. These are all extrinsic facts outside of and independent from the words of the publication.
Plaintiff alleges in her complaint many varied activities as comprising her “ vocation ”. At paragraph “ 15 ” she alleges her vocation is that of ‘ ‘ actress, swimmer, stunt player, one who does sequences for other motion picture actresses, as a stand-in or understudy ”. At paragraph “ 16 ” she alleges she performed services as an “ extra and stand-in ” and also certain swimming scenes asa“ stunt player ’ ’. Thus, by her own allegations, her vocation is composed of various separate and distinct activities. They cannot be grouped by her into a single entity so as to afford her a broad base for libel allegation. Obviously it cannot be said that every actress is an expert swimmer or that every swimmer is an expert, stunt player, or, that every double is an expert stunt player or swimmer. The mere statement that an unnamed “ double ” was not able to swim is not libelous on its face. Plaintiff’s redress therefore is by way of *1077 proving the libel by the extrinsic facts alleged — - not by attempting to make of this publication one that is libelous per se. Since I hold the publication is not libelous per se, the complaint is insufficient for failure to plead special damages. Where a publication is not defamatory on its face, but becomes so only by reason of facts extrinsic to the publication, not only must these extrinsic facts be pleaded and proven but special damages also (Frawley Chem. Corp. v. Larson Co., 274 App. Div. 643; Macri v. Mayer, 22 Misc 2d 429, 430). The liability is only for pecuniary damages which legally resulted therefrom, which must be both alleged and proven. So that no matter how deadly the libel, in the light of such extrinsic facts, the plaintiff is without redress unless he can prove that special damages resulted therefrom (Seelman, Law of Libel, § 373; O’Connell v. Press Pub. Co., 214 N. Y. 352, supra; Gonzales v. Hearst Cons. Pubs., 115 F. Supp. 721). The defendant is not required to affirmatively seek a more particularized allegation of special damage by way of a bill of particulars (Philipp Co. v. New Yorker Staats-Zeitung, 165 App. Div. 377).
The cases cited by plaintiff for support of her position are inapplicable. Firstly, the articles in the cited cases were libelous per se. Secondly, while plaintiff urges here that the publication damaged her in her profession as an “ expert swimmer ”, the words themselves refer to her as a “ double ”, and it cannot therefore be held, as a matter of law, that it is defamatory per se to say that a movie “ double ” cannot swim. As stated by Seelman (supra, pp. 613, 691), and quoted with approval in Gurtler v. Union Parts Mfg. Co. (285 App. Div. 643, 646, affd. 1 N Y 2d 5): “ It is not sufficient that they tend to injure plaintiff in his business, they must have been spoken of him in his business.” (Emphasis supplied.) In Gatley, Libel and Slander (3d ed., p. 61), also quoted with approval in Gurtler (supra, p. 647), we find it to be the rule that: “ There must be some reference, direct or indirect, in the words or in the circumstances attending their utterance, which connects the slander with such office or profession or trade. If the words merely impute to the plaintiff some misconduct unconnected with his office, profession, or trade, they are not actionable without proof of special damage; it is not sufficient that they are calculated to injure him therein.” (See, also, Shakun v. Sadinoff, 272 App. Div. 721, 722). In the case of Hume v. Kusche (42 Misc. 414), we have an extreme situation which points up the rule. There, the alleged slander was: “ You are dishonest. I came for money and I don’t care whether I injure you in your business or not; you are dishonest, you did Hofmeiser out of $200 which *1078 you owed him”. Of these words, the court said (p. 415): “ They [the words] do not touch him in his skill or credit as a tailor. Moreover, there is no allegation in the complaint that the words were spoken of him in the way of his business; and that is essential ”.
In the instant case, there is no reference in the publication to plaintiff’s particular trade or business as an expert swimmer. The fact that the publication imputes what plaintiff claims it does is not actionable without proof of special damage since there is nothing in the article which connects the alleged defamatory matter with plaintiff’s trade or business.
Accordingly, in light of all of the aforesaid, the complaint is dismissed, with leave to serve an amended complaint Avithin 20 days from date of service of a copy of the order to be entered hereon with notice of entry thereof.